*EXHIBIT B*

*FIRST INVESTMENT CONTRACT*

# Venulum Ltd.
## Account Opening Form
## and Terms & Conditions

*This document sets forth the terms and conditions applicable to any purchase of wine or champagne by the undersigned client from or through, and any sale by the undersigned client of any wine or champagne to, Venulum Ltd.*
*Please read this wine program agreement (this "Agreement") carefully. When this Agreement has been signed by you and returned to and accepted by Venulum Ltd, it, together with any and all Purchase Contracts issued from time to time under this Agreement, will constitute a binding contract between you and Venulum Ltd.*

## Agreement

This Agreement is between VENULUM LTD. (referred to herein as "Venulum Ltd."), a company whose principal place of business is located at PO Box 765, 3rd Floor Nagico Building, Main Street, Road Town, Tortola, British Virgin Islands.

and

Name of Account: _Bernard M Eisen Doc_
(Referred to herein as the "Client")
whose principal residence, address and telephone number are as follows:

Street: _67 ALRAD DRIVE_

City: _Williamsville_

State: _NY_                  Zip Code _14221-821_

Telephone Numbers:
Home: _716-688-8411_

Work: _716-634-1300_

Fax: _716-634-1375_

Email: _B9dentist@AOL.com_

Other: _____

URL: _____

WHEREAS, Venulum Ltd. is in the business of dealing in fine wine and champagne;

and

WHEREAS, the Client from time to time may wish to acquire wines or champagne from Venulum Ltd. or sell wines or champagnes to Venulum Ltd.;

and

WHEREAS, the Client and Venulum Ltd. wish to establish and agree upon certain terms and conditions that will apply to any such transaction between the Client and Venulum Ltd.;

NOW, THEREFORE, the Client and Venulum Ltd. hereby agree as follows:

_____

## Defined Terms

In this Agreement, the following words shall have the meanings shown below:

Venulum Ltd: Defined in the preamble above.

Client: Defined in the preamble above.

---

Agreement: Means this Wine Program Agreement.

Affiliate: Means any corporation, company or other entity with which Venulum Ltd. or its Sales Agent has a commercial or business relationship.

Client Questionnaire: Means the questionnaire attached to this Agreement as EXHIBIT A to be completed by the Client and returned to Venulum Ltd..

Delivery: Means with respect to a particular Parcel, the delivery of the Parcel ex Cellars, in the case of a Parcel held in or at the Cellars of the maker or producer at the Delivery Date, or in the case of a Parcel held in or at a Storage Location at the Delivery Date, ex Storage Location.

Delivery Date: Means with respect to a particular Parcel, the date agreed between the Client and Venulum Ltd. as the date on which Delivery of the Parcel is to be effected.

Deposit: Means with respect to a particular Parcel, the deposit or down payment, if any, made by the Client on the Parcel.

Ex Cellars: Means "at the door" of the Cellars.

Ex Storage Location: Means at the Storage Location, "in bond" if applicable.

Order: Means an order, whether delivered orally, telephonically, electronically or in writing by the Client to Venulum Ltd., to purchase a Parcel.

Parcel: Means a particular quantity of a particular wine or champagne.

Payment Date: Means with respect to a particular Parcel the agreed date for payment of the Unpaid Balance.

Purchase Contract: Means a written Contract issued by or on behalf of Venulum Ltd. to the Client pursuant to an Order, setting out the details of the Order, including the wine or champagne comprising the Parcel(s), the Purchase Price, the Deposit, the Unpaid Balance, the Payment Date and the Delivery Date.

Purchase Price: Means with respect to a particular Parcel, the full purchase price (inclusive of any Deposit) for the Parcel ex Cellars or ex Storage Location, as the case may be: The Purchase Price does not include the cost of shipping the Parcel from the storage location to the place of Delivery, nor does it include, where applicable, the costs of storage and insurance after the Delivery Date, or the costs of packaging or bond handling or the payment of customs duties or taxes.

Sales Agent: Means Venulum Inc. or any other sales or marketing agent appointed by Venulum Ltd.

EXHIBIT
1

**Storage Location:** Means with respect to a particular Parcel that is not in or at the Cellars of the maker or producer at the Delivery Date, the warehouse where such Parcel is located at the Delivery Date.

**Unpaid Balance:** Means with respect to a particular Parcel, the difference between the Deposit, if any, and the Purchase Price of such Parcel.

**Purchase Terms:** The Client and Venulum Ltd. will agree upon the Purchase Price, Deposit, payment terms and Delivery terms for each Parcel at the time the Order for such Parcel is placed.

**Sales:** The Client may offer any Parcel, or its rights to any Parcel, to Venulum Ltd. at any time after payment of the Deposit with respect to that Parcel, provided that Venulum Ltd. shall not be obligated to accept any such offer. In the event that Venulum Ltd. accepts such an offer by the Client, Venulum Ltd. will credit the Client the agreed sale price of such Parcel within 30 days of acceptance of such offer.

**Client Questionnaire:** The Client has completed the Client Questionnaire attached to this Agreement as EXHIBIT A, and hereby confirms and warrants to Venulum Ltd. the accuracy of the representations made by the Client in the Client Questionnaire: The Client must be 21 years old or older to purchase wines or champagnes from Venulum Ltd..

**Payments:** The Purchase Price terms for a Parcel, including whether any Deposit is required and when the Unpaid Balance for a Parcel must be paid shall be agreed at the time of the Order and set forth in the Purchase Contract relating to such Parcel: In addition, Venulum Ltd. and the Client agree to the following terms of payment of the Purchase Price for a Parcel:

**Deposits:** Venulum Ltd. may require that the Client place a Deposit with Venulum Ltd. at the time an Order is placed: If a Deposit is required by Venulum Ltd., it shall be paid to Venulum Ltd. within fourteen (14) days of the date of the Order relating to such Deposit or such further period as Venulum Ltd. may in its sole discretion allow.

**Unpaid Balance:** The Client shall pay, free of bank charges or other deductions or set-offs, to Venulum Ltd. the Unpaid Balance with respect to a Parcel on the Payment Date: Should the Client fail to pay the Unpaid Balance with respect to a Parcel on or before the Payment Date, the Client shall, as liquidated damages and not as a penalty, forfeit to Venulum Ltd. any rights to or interest in the Deposit and any other monies paid to Venulum Ltd. with respect to such Parcel, which forfeiture shall be without prejudice or limitation of any other rights or remedies to which Venulum Ltd. may be entitled:

**Client Sale Proceeds:** If the Client instructs Venulum Ltd. to hold any proceeds resulting from the sale by the Client of a Parcel or any portion thereof, then Venulum Ltd. will deposit such proceeds in an account with a reputable bank or other financial institution, and will provide for the payment of such proceeds to the Client upon the Client giving seven (7) days written notice to Venulum Ltd. to that effect, subject to the following:

**Interest:** The Client agrees that any such sale proceeds of the Client held by Venulum Ltd. for the account of the Client, will not accrue any interest unless otherwise specifically agreed in writing by Venulum Ltd.

# Delivery, Title and Risk of Loss

## Delivery

Venulum Ltd. shall not be required to arrange for or effect Delivery of any Parcel until the whole of the Purchase Price of such Parcel has been paid in full: Delivery shall in all cases be ex Cellars, except that Delivery in the case of wines or champagnes held by Venulum Ltd. at a Storage Location shall be ex Storage Location:

The Client acknowledges and understands that many jurisdictions have enacted laws to regulate the shipment of alcoholic beverages purchased outside of that jurisdiction. Some statutes make such shipments a crime unless a permit or license is obtained. Since these laws may affect the Client's purchase from Venulum Ltd., the Client should investigate the laws on this subject that are applicable to the Client before shipping or arranging to ship any wine or champagne purchased from Venulum Ltd. from the place of Delivery. The Client, and not Venulum Ltd., is the owner and shipper of each Parcel purchased at the place of Delivery of such Parcel. Accordingly, if the Client desires to arrange delivery of a Parcel after purchase and Delivery by Venulum Ltd., then the Client is responsible and bears all expense and risks, including packaging, customs duties, taxes, selecting a carrier and providing delivery instructions. Venulum Ltd. is unable to assume any responsibility for assuring compliance with applicable laws, obtaining licenses or otherwise giving advice on shipment laws.

The Client is solely liable for verifying upon Delivery the merchantability and fitness of any Parcel, and the compliance of such Parcel with its description. The Client shall, within 7 days of Delivery of a Parcel, give written notice to the producer or storage location of the Parcel, and to Venulum Ltd., of any claim of defect in the Parcel. Any claim not notified within such time shall be barred thereafter. The Client shall ensure that any further delivery, distribution, sale or deal regarding the Parcel subsequent to Delivery shall comply in all respects with any conditions and restrictions imposed by applicable law and/or the producer or storage company of the Parcel. The Client hereby releases, and agrees to indemnify, defend and hold harmless, Venulum Ltd. and its affiliates in respect of any claim in connection with such conditions or restrictions.

In the event the Client pays the Purchase Price of a Parcel in full, but has not arranged for the further storage of the Parcel at his expense or for the transportation of the Parcel from the place of Delivery within 30 days of the Delivery Date, then, without prejudice to any other rights of Venulum Ltd., Venulum Ltd. shall be entitled to sell the Parcel, deduct any amounts due to Venulum Ltd. or its Affiliates, and account to the Client for the remaining balance thereof, if any.

## Title

Where Venulum Ltd. holds title to a Parcel, title to such Parcel shall pass to the Client only upon payment in full of the Purchase Price applicable to such Parcel, subject to the performance of any act required by applicable law to appropriate or identify the wine or champagne (by for instance specific bottles or cases) comprising such Parcel: Where Venulum Ltd. does not yet hold full title to a Parcel, the payment in full of the Purchase Price applicable to such Parcel shall, subject to applicable law, entitle the Client, through Venulum Ltd., to such proprietary rights in and to such Parcel as are held by Venulum Ltd..

## Risk of Loss

The Client shall assume the risk of damage or loss of a Parcel upon Delivery to the Client of such Parcel: After Delivery of a Parcel, it shall be the responsibility of the Client to arrange for any insurance of the Parcel.

**No Tax Advice:** The Client acknowledges and agrees that Venulum Ltd. will not advise the Client with regard to federal, state or local income tax

considerations or other tax considerations that may be applicable to the Client or any transaction involving the purchase or sale of a Parcel or any portion thereof: The Client is urged and expected to consult with the Client's own tax advisor regarding such considerations.

**NO WARRANTIES.** Venulum Ltd. in no way represents to the Client that it is a wine or champagne expert: Venulum Ltd. makes no express warranty regarding any parcel and disclaims any implied warranty, including any warranties of merchantability or fitness for a particular purpose: Venulum Ltd. will not make or analyze any parcel: Venulum Ltd. does not authorize anyone to make a warranty of any kind on its behalf and the client should not rely on any such statement: this paragraph shall survive termination of this agreement.

## Liabilities & Indemnities

**Responsibility of Venulum Ltd:** In the event that Venulum Ltd. fails to exercise reasonable care and skill in performing its obligations hereunder in relation to the purchase by the Client of a Parcel, Venulum Ltd. undertakes to indemnify and hold harmless the Client against any direct losses, damages, expenses, costs (including costs of defense) and liabilities which the Client may suffer as a direct result thereof: Notwithstanding the foregoing, the extent of liability of Venulum Ltd. to the Client shall be limited to the amount of the Purchase Price for the Parcel that has actually been paid to Venulum Ltd., and in no event will Venulum Ltd. be responsible for any consequential damages, including, but not limited to, damages for loss of profits, of the Client.

**Responsibility of the Client:** In the event that the client acts in breach of this agreement, the client shall indemnify and hold harmless Venulum Ltd. against any and all losses, damages, expenses, costs (including costs of defense) and liabilities that Venulum Ltd. suffers or incurs as a result of such breach.

**Client Information:** The Client hereby grants to Venulum Ltd. a perpetual, non-exclusive license to use (in the manner set forth below) the information regarding the Client that is set forth herein, contained in the Client Questionnaire or otherwise provided to Venulum Ltd., the Sales Agent or any Affiliate by the Client (collectively, the "Client Information"). The Client agrees that Venulum Ltd., the Sales Agent and any Affiliate may use the Client Information that identifies the Client (such as name, social security number, credit card number, email address and telephone number) solely for the purposes of giving effect to this Agreement and generally for marketing other products or services offered by Venulum Ltd. or its Sales Agent or Affiliates, and may share such information with the Sales Agent or any Affiliate who may use the Client Information for such purposes: Such personally identifiable Client Information may not be used for any other purpose, or shared with any other person without the prior written consent of the Client: The Client agrees that Venulum Ltd., the Sales Agent and the Affiliates may share such of the Client Information that does not personally identify the Client (such as age, gender, income level, zip code, etc.) with any person and may use such Client Information for any purpose: Venulum Ltd. will take reasonable steps to attempt to ensure that the party(ies) with whom Venulum Ltd. the Sales Agent or any Affiliate share the Client Information will comply with Venulum Ltd.'s policy regarding use or disclosure of the Client Information, and that such party(ies) will take reasonable precautions to protect such information.

For the purposes of any data protection legislation which might apply to any data provided by the Client, now or in the future, to Venulum Ltd., the Sales Agent or any Affiliates, Venulum Ltd. appoints its Sales Agent as the responsible entity under such legislation.

**Content:** The Client agrees that Venulum Ltd. retains all proprietary right, title and interest, including copyright, in this Agreement and all promotional materials of Venulum Ltd. and its Affiliates, including but not limited to text, images, and other multimedia data, (the "Content") that is produced by or on behalf of Venulum Ltd. and distributed to the Client, including the Content on the website of Venulum Ltd: The Client agrees that it will not copy, license, sell, transfer, make available or otherwise distribute the Content to any entity or person.

Venulum Ltd. disclaims any and all representations and warranties, express or implied, and makes no representations or warranties, regarding the completeness or accuracy of the Content.

**Confidentiality:** The Client agrees that he shall keep this Agreement and all dealings with or through Venulum Ltd. or its Sales Agent strictly confidential and shall not disclose, directly or indirectly, any information relating to this Agreement or any dealings with or through Venulum Ltd. or its Sales Agent to any third party whatsoever. The Client acknowledges that any breach of this confidentiality clause will lead to Venulum Ltd. suffering damages or loss. Accordingly, in the event that the Client breaches this confidentiality clause, as liquidated damages but not as a penalty, he shall forfeit all rights to any monies paid in respect of any Order under this Agreement which forfeiture shall be without prejudice or limitation of any other rights or remedies to which Venulum Ltd. may be entitled. Any disclosure by the Client which is made where necessary to comply with any law applying to the Client or which is made under any order of a competent court, shall not constitute a breach of this section: Similarly, any disclosure made by the Client to obtain professional advice in respect of this Agreement or any Order shall not constitute a breach of this section, provided that the Client procures in advance of such disclosure the undertaking of such professional advisor to be bound by the terms of this section.

**Complete Agreement:** This Agreement constitutes the entire agreement made between the Client and Venulum Ltd. with respect to any Parcel. All other terms and conditions, including, without limitation, any representations or implied terms, are hereby expressly excluded.

## Force Majeure and Termination
### Force Majeure

A party shall not be in breach of this Agreement if such party's non-performance of its duties and obligations under this Agreement is a result of any act of God, fire, act of government or state, war, civil commotion, insurrection, embargo, prevention from or hindrance in obtaining any raw materials, energy or other supplies, labor disputes of whatever nature or any other reason beyond the control of such party: If either party is unable to perform its duties and obligations under this Agreement as a direct result of the effect of one of those reasons, that party shall give written notice to the other of the inability, which notice shall set out full details of the reason in question. The operation of this Agreement shall be suspended during the period (and only during the period) in which the reason continues: As soon as such reason ceases to exist, the party relying upon it to excuse its performance hereunder shall give written notice to the other party of this fact: If the reason continues for a period of more than 90 days and substantially affects the commercial intention of this Agreement, the party not claiming relief under this clause shall have the right to terminate this Agreement upon giving 15 days' written notice of such termination to the other party.

## Termination

Either party shall be entitled forthwith to terminate this Agreement by written notice to the other party if such other party commits any material breach of any of the provisions of this Agreement and, in the case of a breach capable of remedy, fails to remedy the same within 15 days after receipt of a written notice from the non-breaching party giving full particulars of the breach and requiring the breaching party to remedy such breach.

Either party shall be entitled to terminate this Agreement by written notice of not less than 90 days to the other party (the "Defaulting Party") if:

· A receiver is appointed over any of the property or assets of the Defaulting Party;

· The Defaulting Party makes any voluntary arrangement with its creditors;

· The Defaulting Party is declared bankrupt or insolvent, or is deemed by a competent court authority to be unable to pay its debts generally as they become due, or proceedings are commenced for its liquidation or dissolution (other than for the purposes of a corporate restructuring and the restructured entity agrees to be bound by the terms of this Agreement);

· Anything analogous to any of the foregoing under the laws of any jurisdiction occurs in relation to the Defaulting Party; or

· The Defaulting Party ceases, or threatens to cease, to carry on business.

· The rights to terminate this Agreement given by this section shall be without prejudice to any other right or remedy of the party seeking termination.

· Termination of this Agreement shall not affect or release the Client from his obligations or liability with respect to any Order placed prior to such termination.

## Governing Law; Arbitration

Law: This Agreement shall be governed by and construed in accordance with the law of the British Virgin Islands, without regard to the conflicts of law provisions thereof.

Arbitration: In the event that any dispute whatsoever arises between the Client and Venulum Ltd. in relation to or in any way in connection with this Agreement, the Client and Venulum Ltd. hereby agree that such dispute shall be referred to binding arbitration in the British Virgin Islands applying British Virgin Islands law: Such arbitration shall be before one arbitrator appointed by the Client, one arbitrator appointed by Venulum Ltd. and one arbitrator appointed by such two arbitrators, if either or both of them considers it appropriate: The Arbitrators' costs will be borne equally by the Client and Venulum Ltd.: The arbitration shall take place in accordance with the Rules of the International Chamber of Commerce.

If the claim to be arbitrated is a claim by the Client, then unless the Client's arbitrator is appointed within six months of the dispute arising, such claim shall be deemed to be absolutely released, waived and barred and Venulum Ltd. shall be discharged from all liability.

## Notices

To Venulum Ltd: Any notice required or permitted to be given hereunder by the Client to Venulum Ltd. shall be given in writing by registered post to its

Sales Agent, Venulum Inc, Royal Trust Tower, 77 King Street West, 31ˢᵗ Floor, P.O. Box 83, Toronto Ontario M5K 1G8 or such other address as shall be notified to the Client from time to time.

To the Client: Any notice or other information required or authorized by this Agreement to be given by Venulum Ltd. to the Client shall be given by hand or sent (by first class pre-paid post, telex, cable, facsimile transmission or comparable means of communication) to the Client at the address referred to above.

## Miscellaneous

No Waiver: Any waiver by either party of a breach of any provision of this Agreement shall not be considered as a waiver of any subsequent breach of the same or any other provision hereof.

Use of Words: Words importing the singular include the plural, and words importing the masculine also include the feminine.

Counterparts: This Agreement may be executed in one or more counterparts, all of which, taken together, shall constitute the same agreement. The date of signature of this Agreement shall be the date that the last party hereto executes this Agreement whether in counterpart or not.

Facsimile Signature: This Agreement may be executed by facsimile and such a signed facsimile shall have the same force and effect as an original signed agreement.

Severability: If any provision of this Agreement is held by any competent authority to be invalid or unenforceable in whole or in part, then the validity of the other provisions of these Conditions and the remainder of the provision in question shall not be affected thereby and this Agreement shall be interpreted to give effect as near as possible to the intent of the parties expressed in such invalid or unenforceable provision(s).

Telephony: Recordings of Transactions, the Client acknowledges and agrees that any telephone conversations between the Client and Venulum Ltd. or its Sales Agent may be recorded by Venulum Ltd. or its Sales Agent.

IN WITNESS WHEREOF, the Client and Venulum Ltd. have each executed this Agreement as of the date(s) indicated below.

THE "CLIENT" _Bernard M. Esser Des_

[Signature]

_Bernard. M. Esso Des_

[Printed Name]

Date: _3/26/07_

VENULUM Ltd.

[Signature]

_GILES CADMAN_

[Printed Name]

Date: _29-03-07_

EXHIBIT A

# Venulum Ltd.
# Client Questionnaire

*All information furnished is for the sole use of Venulum Ltd, its sales agent and affiliates (collectively, "Venulum Ltd.") and will be held in confidence by Venulum Ltd. in accordance with the terms of the agreement to which this exhibit is attached. Notwithstanding the foregoing, this questionnaire may be furnished to such parties as Venulum Ltd. and its counsel deem necessary to establish compliance with federal or state laws.*

**A.** The following information is to be provided so that Venulum Ltd. can determine if the client is an "accredited investor" within the meaning of United States federal securities laws.

The Client is (please check all that apply):

☐ A corporation, Massachusetts or similar business trust, or partnership with total assets in excess of $5,000,000.

☐ An employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if (a) the purchase decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, savings and loan association, insurance company or registered investment adviser, or (b) the employee benefit plan has total assets in excess of $5,000,000, or (c) the employee benefit plan is a self-directed plan and all purchase decisions are made solely by persons that are accredited investors.

☒ A natural person whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000. For purposes of calculating net worth, any assets may be considered including the fair market value of one's principal residence and automobiles. The principal residence owned by an individual should be valued either at (A) cost, including the cost of improvements, net of current encumbrances upon the property, or (B) the appraised value of the property as determined upon a recent written appraisal used by an institutional lender making a loan secured by the property, including the cost of subsequent improvements, etc of current encumbrances upon the property.

☒ A natural person who had an individual income (not including income of spouse) in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and who reasonably expects to reach the same income level in the current year. "Income" may include amounts normally excluded from "adjusted gross income" (for United States federal income tax purposes) such as any amounts attributable to tax exempt income received, losses claimed as a limited partner in any limited partnership, deductions claimed for depletion, contributions to an IRA or Keogh retirement plan, alimony payments, and any amount by which income from long-term capital gains has been reduced in arriving at adjusted gross income. However, "income" is not necessarily synonymous with "revenue"; for example, a self-employed person should deduct operating expenses to give an accurate indication of income.

☐ A trust, with total assets in excess of $5,000,000;

☐ An entity in which all of the equity owners meet the requirements of any of the items immediately above.

**B.** The following information is to be provided by clients who are individuals, or by the person making the purchase decision on behalf of corporations, partnerships, trusts, or other entities.

1. Do you understand the merits and risks associated with purchases and sales of wine and champagne?

   Yes _✓_        No ____

2. Do you understand that there is no guarantee of any financial return on the purchasing and selling of wine and/or champagne and that you run the risk of suffering a total loss on the purchase and sale of wine and/or champagne?

   Yes _X_        No ____

3. Please describe the level of education you have achieved:

   *SUNY @ Buffalo, 19-?? DDS*

4. Please describe briefly your experience in purchasing wines or champagnes:

   *NFA*

5. Please describe briefly your experience in investing in equity or debt securities:

   *MERRILL LYNCH FF&S*
   *REAL ESTATE ID FLORIDA*
   *RETIREMENT FUND*

6. If an individual, please provide your full name, social security number and date of birth:

   Name: *Bernard M. Esson DDS*

   Male _X_        Female ____

   Social Security Number: _____ *7148*

   Date of Birth: _____ *1952*



| Client A/C | 0983 |
|---|---|

| | |
|---|---|
| Client Name: | Bernard M. Eisen DDS |
| Company Name: | |
| Address: | 69 Alran Drive |
| City: | Williamsville |
| State: | NY |
| Zip: | 14221 |

| Purchase Invoice #: | 15066 |
|---|---|

| | |
|---|---|
| Deposit Paid | $122,480.64 |
| Controlled Value | $382,752.00 |
| Installment | $65,067.84 |

| Stock ID | Description | Vintage | Cases | Deposit | Controlled Value | Installment Amount | Due Date |
|---|---|---|---|---|---|---|---|
| 100613 | Château Lafite Rothschild | 1982 | 1 | $18,576.00 | $58,050.00 | $9,868.50 | 08-Apr-09 |
| 100614 | Château Latour | 1982 | 1 | $14,774.40 | $46,170.00 | $7,848.90 | 08-Apr-09 |
| 100462 | Château Mouton Rothschild | 1986 | 1 | $6,220.80 | $19,440.00 | $3,304.80 | 08-Apr-09 |
| 100484 | Château Haut-Brion | 1989 | 1 | $8,985.60 | $28,080.00 | $4,773.60 | 08-Apr-09 |
| 100465 | Petrus | 1989 | 1 | $25,920.00 | $81,000.00 | $13,770.00 | 08-Apr-09 |
| 100473 | Château Latour | 1990 | 1 | $5,961.60 | $18,630.00 | $3,167.10 | 08-Apr-09 |
| 100476 | Château Margaux | 1990 | 1 | $8,190.72 | $25,596.00 | $4,351.32 | 08-Apr-09 |
| 100336 | Château Lafite Rothschild | 1996 | 1 | $6,739.20 | $21,060.00 | $3,580.20 | 08-Apr-09 |
| 101205 | Château Latour | 1996 | 1 | $5,702.40 | $17,820.00 | $3,029.40 | 08-Apr-09 |
| 100266 | Château Cheval Blanc | 2000 | 1 | $7,516.80 | $23,490.00 | $3,993.30 | 08-Apr-09 |
| 101201 | Château Lafite Rothschild | 2000 | 1 | $10,368.00 | $32,400.00 | $5,508.00 | 08-Apr-09 |
| 100026 | Château d'Yquem | 1997 | 1 | $1,710.72 | $5,346.00 | $908.82 | 08-Apr-09 |
| 100409 | Penfolds Bin 95 Grange (He | 1998 | 1 | $1,814.40 | $5,670.00 | $963.90 | 08-Apr-09 |

| Amount | Method of Payment | Date Payment Received |
|---|---|---|
| $119,950.18 | Funds From Account | 07-Oct-08 |
| $2,530.46 | Credit | 07-Oct-08 |



FOR & ON BEHALF OF venulum

Date of Issue:   07-Oct-08

## Venulum Ltd.

4th Floor, Rodus Building, P.O. Box 765, Road Reef, Road Town, Tortola, British Virgin Islands
Incorporation Number: 492074

Terms: Failure to pay the installments when due will result in the loss of the Contract Premium. All option payments are non-refundable. Goods supplied in U.K. warehouse. The content of this document is strictly confidential. This agreement is subject to our standard terms and conditions as supplied in the account opening form. Further copies are available on request. Please note: Past performance is not necessarily indicative of future gain.

Special Conditions: The parties agree the contract intention is to trade the margin and or the wine. The parties agree that the client does not anticipate physical delivery of the wine. In the event that a buyer for the contract or the wine cannot be found, the client will be required to pay the unpaid balance on the due date. The contract is transferable.

© Copyright Venulum Ltd.  E&O Accepted