## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Bernard M. Eisen, DDS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 1:16-cv-461-EAW |
| | ) |
| v. | ) |
| | ) |
| Venulum Ltd., Giles Cadman, | ) |
| Individually, Mark Trotter, Individually, | ) |
| and Philip Serrien, Individually, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO COMPEL ARBITRATION AND
## TO DISMISS OR STAY THIS LITIGATION

ELLENOFF GROSSMAN & SCHOLE LLP
Atul R. Singh
Michael J. Sullivan (Admission Pending)
Glen A. Sproviero (Admission Pending)
1345 Avenue of the Americas
New York, New York 10105
Telephone: 212.370.1300
Facsimile: 212.370.7889

*Attorney for Defendants Venulum, Ltd., Giles Cadman, Mark Trotter, and Philip Serrien*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ................................................................................................... 1

FACTS ................................................................................................................... 1

ARGUMENT ........................................................................................................... 4

   I.    THE DISPUTE BETWEEN PLAINTIFF AND DEFENDANTS SHOULD BE
       ARBITRATED AND THIS LITIGATION SHOULD BE DISMISSED ...................... 4

     A.  This Litigation Must Be Dismissed as the Issue of Arbitrability of this
        Dispute Must Be Resolved by an Arbitrator ................................................. 4

     B.  The FAA Applies to the Present Dispute and Strongly Favors the
        Arbitration of Disputes .............................................................................. 6

     C.  This Litigation Should Be Dismissed Pursuant to the Doctrine of Equitable
        Estoppel .................................................................................................... 7

     D.  The Inclusion of Non-signatories to the Contracts as Defendants in this
        Litigation Does Not Preclude Arbitration of this Dispute ............................ 8

   II.   THIS LITIGATION SHOULD BE STAYED PENDING RESOLUTION OF
       THE ARBITRATION BETWEEN PLAINTIFF AND DEFENDANTS .................... 10

CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

Arthur Andersen LLP v. Carlisle,
  556 U.S. 624, 629-30, 129 S.Ct. 1896 (2009) ............................................................. 6

Better Benefits, Inc. v. Protective Life Ins. Co.,
  No. 03 Civ. 2820 (LAP), 2004 WL 633730, at *5 (S.D.N.Y. Mar. 30, 2004) ......................... 10

Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.,
  271 F.3d 403, 406 (2d Cir. 2001) ................................................................................. 9

Denney v. Jenkens & Gilchrist,
  412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005) ................................................................... 8

Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC,
  371 F. Supp. 2d 571 (S.D.N.Y. 2005) ........................................................................ 10

Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC,
  371 F. Supp. 2d 571, 574 (S.D.N.Y. 2005) ................................................................... 4

Green Tree Fin. Corp.-Ala. v. Randolph,
  531 U.S. 79, 91, 121 S.Ct. 513 (2000) ......................................................................... 7

Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.,
  246 F.3d 219, 226 (2d Cir. 2001) ................................................................................ 9

In re A2P SMS Antitrust Litigation,
  973 F. Supp. 2d 465, 473 (S.D.N.Y. 2013) ............................................................... 6, 7

JLM Inds., Inc., et al. v. Stolt-Nielsen, SA,
  387 F.3d 163, 178 (2d Cir. 2004) ................................................................................ 9

JLM Industries, Inc. v. Stolt—Nielsen SA,
  387 F.3d 163, 171 (2d Cir. 2004) ................................................................................ 7

Lismore v. Societe Generale Energy Corp.,
  No. 11 Civ. 6705(AJN), 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012) ..................... 7, 8

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
  473 U.S. 614, 625, 105 S.Ct. 3346 (1985) .................................................................... 6

Moses H. Cone Me'l Hosp. v. Mercury Constr. Corp.,
  460 U.S. 1, 24-25, 103 S.Ct. 927 (1983) ...................................................................... 7

Norcom Electronics Corp. v. CIM USA Inc.,
  104 F. Supp. 2d 198 (S.D.N.Y. 2000) ........................................................................ 10

Orange Chicken, LLC v. Nambe Mills, Inc.,
  No. 00 Civ. 4730(AGS), 2000 WL 1858556, at *9 (S.D.N.Y. Dec. 19, 2000) ...................... 11

PaineWebber Inc. v. Bybyk,
  81 F.3d 1193 (2d Cir. 1996) ...................................................................................... 4

Ragone v. Atl. Video at Manhattan Ctr.,
  No. 07 Civ. 6084 (JGK), 2008 WL 4058480, at 12728 (S.D.N.Y. Aug. 29, 2008) ................. 8

Schnabel v. Trilegiant Corop.,
   697 F.3d 110, 113 (2d Cir. 2012) ................................................................ 7

Shearson/American Exp., Inc. v. McMahon,
   482 U.S. 220, 220, 107 S.Ct. 2332 (1987) ................................................ 11

Sokol Holdings, Inc. v. BMB Munai, Inc.,
   542 F.3d 354, 359 (2d Cir. 2008) ................................................................ 8

Thomson-CSF, S.A. v. Sm. Arbitration Ass'n,
   64 F.3d 773, 776 (2d Cir. 1955) .................................................................. 6

Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co.,
   933 F. Supp. 1170 (S.D.N.Y. 1996) ............................................................ 8

**Statutes**

9 U.S.C. § 1…………………………………………………………………………… 1

9 U.S.C. § 2.................................................................................................... 7, 8

9 U.S.C. § 3....................................................................................................... 7

**Rules**

FED. R. CIV. P. 12............................................................................................. 1

Defendants Venulum Ltd. ("Venulum") , Giles Cadman ("Cadman"), Mark Trotter

("Trotter"), and Philip Serrien ("Serrien") (collectively, "Defendants"), respectfully submit this

Memorandum of Law in support of their motion to compel arbitration and dismiss the Complaint

(the "Complaint"), or, in the alternative, to compel arbitration and stay proceedings, pursuant to

9 U.S.C. § 1, *et seq.*[1]

## INTRODUCTION

Plaintiff Bernard M. Eisen, DDS ("Plaintiff" or "Eisen") presumptively asserts in this

Court broad claims arising out of and relating to his contractual relationship with defendant

Venulum.

As set forth below, Eisen's Complaint fails to disclose to the Court, however, that the

terms of the contracts at issue in this matter each require arbitration as the sole forum for

determining claims arising thereunder.  Therefore, the claims Eisen asserts in his Complaint

cannot proceed before this Court.  Accordingly, the Court should dismiss or stay them, and order

that they be brought in arbitration.

## FACTS

Plaintiff Eisen signed three separate contracts with defendant Venulum, a British Virgin

Islands corporation, all of which contained arbitration provisions.

---

[1] Defendants file the instant motion for the limited purpose of asking the Court to dismiss or stay
this proceeding and order that the matter be sent to arbitration.  This motion is filed in lieu of an
answer or motion pursuant to FED. R. CIV. P. 12(b), but in the event that the present motion is
denied, Defendants reserve the right to either answer the Complaint or file an appropriate
dispositive motion pursuant to FED. R. CIV. P. 12(b).  Moreover, as of the date of this motion,
defendants Venulum and Cadman have not been served with the summons and complaint in this
matter.  By making this limited motion, neither Venulum nor Cadman waive their right to require
plaintiff to properly effectuate service upon them.

The first contract opened an account for Eisen to acquire wines or champagnes from Venulum, was dated March 29, 2007, and entitled the "Venulum Ltd. Account Opening Form and Terms & Conditions" (the "Terms and Conditions"). (ECF Dkt. 1-2, Ex. B.) The Terms and Conditions contains a captioned section entitled "Governing Law; Arbitration" that states, in whole:

> **Arbitration:** In the event that any dispute whatsoever arises between the Client [Eisen] and Venulum Ltd. in relation to or in any way in connection with this Agreement, the Client and Venulum Ltd. hereby agree that such dispute shall be referred to binding arbitration in the British Virgin Islands applying British Virgin Islands law: Such arbitration shall be before one arbitrator appointed by the Client, one arbitrator appointed by Venulum Ltd. and one arbitrator appointed by such two arbitrators, if either or both of them considers it appropriate: The Arbitrators' costs will be borne equally by the Client and Venulum Ltd.: The arbitration shall take place in accordance with the Rules of the International Chamber of Commerce.
>
> If the claim to be arbitrated is a claim by the Client, then unless the Client's arbitrator is appointed within six months of the dispute arising, such claim shall be deemed to be absolutely released, waived and barred and Venulum Ltd. shall be discharged from all liability.

(ECF Dkt. 1-2, Ex. B, at 5.)    By its express terms, arbitration over any dispute related to the contract was mandatory and binding. Id. Further, in signing the contract, Eisen agreed that any dispute he had with regard to the contract must be raised in arbitration within six months of the dispute arising. Id.

The second contract was an agreement whereby Eisen and Venulum agreed to revise his obligation due to payment default. This second agreement was entitled "Agreement between Venulum Ltd. & Dr. Bernard M. Eisen, DDS", dated March 16, 2010 (the "Second Contract"), and contained an arbitration provision within this short three page document in Section 8 that was entitled "Arbitration." (ECF Dkt. 1-3, Ex. C, at 3.) The arbitration provision obligates the parties that: "In the event that any dispute whatsoever arises between the Parties in relation to or

in any way in connection with this Agreement, the Parties hereby agree that such dispute shall be referred to binding arbitration in the British Virgin Islands applying British Virgin Islands law. Such arbitration shall be before an arbitrator appointed by Venulum.  The arbitration shall take place in accordance with the rules of the International Chamber of Commerce." (ECF Dkt. 1-3, Ex. C, at 3.)

The third agreement executed by Eisen, dated October 3, 2013, was a Fine Wine Purchase Agreement (the "Fine Wine Purchase Agreement," and collectively with the Terms and Conditions and the Second Contract, the "Venulum Contracts").  Section 9 of this Fine Wine Purchase Agreement is distinctively entitled "Governing Law & Arbitration."  Just like the Terms and Conditions, this Fine Wine Purchase Agreement mandates arbitration.  "In the event that any dispute whatsoever arises between the Contractholder and the Company in relation to or in any way in connection with the Contract, the Contractholder and the Company hereby agree that such dispute shall be finally settled by binding arbitration in the British Virgin Islands applying British Virgin Islands law in accordance with the Rules of Arbitration of the International Chamber of Commerce ("ICC Rules")." (ECF Dkt. 1-9, Ex. I, at 11, Section 9.2.) Moreover, by executing the Fine Wine Purchase Agreement, Eisen represented and warranted that he has "such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of its purchases pursuant to the Contract and that it is able to bear such risks, and has obtained, in its judgment, sufficient information from the Company or the Company's authorized representative to evaluate the merits and risks of such purchases, and the "Contract (i) shall be binding upon the Contractholder ..." (ECF Dkt. 1-9, Ex. I, at 13, 15, Sections 11.5, 11.19.)

Indeed, in all three contracts attached to the Complaint, which were executed at separate points of time in the relationship, an explicit arbitration provision is included. Now Plaintiff is intentionally attempting to circumvent those provisions.

It is clear that: (1) this dispute relates directly to the terms of the contract signed with Venulum; (2) the Federal Arbitration Act applies to the contract as it directly affects interstate commerce; and (3) the introduction of additional defendants who are nonsignatories to the contract does not devoid the parties' obligation to arbitrate this dispute. Throughout every transaction and interaction by and between Eisen and Venulum or its representatives, it was understood and fully disclosed that any dispute was subject to arbitration.

## ARGUMENT

### I.   THE DISPUTE BETWEEN PLAINTIFF AND DEFENDANTS SHOULD BE ARBITRATED AND THIS LITIGATION SHOULD BE DISMISSED.

The Contracts directly at issue in the present litigation contain broad arbitration provisions requiring the parties to engage in binding arbitration. Nonetheless, Eisen wrongfully seeks to ignore and avoid arbitration of his claims.

### A.   This Litigation Must Be Dismissed as the Issue of Arbitrability of this Dispute Must Be Resolved by an Arbitrator.

Generally, courts are empowered to decide issues of whether a contract is subject to arbitration. However, the issue of arbitrability is left to the arbitrator where a contract includes clear and unmistakable evidence in its arbitration provision that the parties intended that the question of arbitrability be decided by the arbitrator. Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC, 371 F. Supp. 2d 571, 574 (S.D.N.Y. 2005). In PaineWebber Inc. v. Bybyk, 81 F.3d 1193 (2d Cir. 1996), the Second Circuit held that a broadly worded clause requiring arbitration of "any and all" controversies constituted clear and unmistakable evidence of the

parties' intent to arbitrate questions of arbitrability. <u>Id.</u> at 1199-1200; <u>see also</u> <u>Smith Barney Shearson Inc.v. Sacharow</u>, 91 N.Y.2D 39, 46, 689 N.E.2d 884 (1997) (where a clause requiring arbitration of "any controversy" was held to be sufficiently "plain and sweeping as to establish clear and unmistakable evidence of the parties' intent to arbitrate arbitrability).

Further, in <u>Shaw Group Inc. v. Triplefine Int'l Corp.</u>, 322 F.3d 115 (2d Cir. 2003), the agreement at issue was broadly worded, stating that "[a]ll disputes . . . concerning or arising out of" the agreement at issue were to be submitted to mandatory arbitration. The Second Circuit held that such agreement clearly and unmistakably evidenced the parties intent to arbitrate questions of arbitrability. <u>Id.</u> at 121. The agreement specifically incorporated the rules of the International Chamber of Commerce, which empower the arbitrator to decide questions of arbitrability. <u>Id.</u> at 121-22; <u>accord</u> <u>Contec Corp. v. Remote Solution Co.</u>, 398 F.3d 205, 208 (2d Cir. 2005) ("We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); <u>cf.</u> <u>Sacharow</u>, 91 N.Y.2d at 46 (the court's conclusion that a broadly worded arbitration clause clearly and unmistakably evidenced the parties' intent to arbitrate questions of arbitrability was "buttresse[d]" by the fact that the agreement incorporated arbitral rules that empower the arbitrator to decide issues of arbitrability).

Here, the arbitration provisions in each and every contract executed by the parties to this litigation contained identically broad verbiage that requires an arbitrator to determine if the dispute is subject to arbitration. The Terms and Conditions states: "In the event that any dispute whatsoever arises between the Client [Eisen] and Venulum Ltd. in relation to or in any way in connection with this Agreement . . ." (ECF Dkt. 1-2, Ex. B, at 5.) The Second Contract states:

"In the event that any dispute whatsoever arises between the Parties in relation to or in any way in connection with this Agreement . . ." (ECF Dkt. 1-3, Ex. C, at 3.) "In the event that any dispute whatsoever arises between the Contractholder and the Company in relation to or in any way in connection with the Contract . . ." (ECF Dkt. 1-9, Ex. I, at 11, Section 9.2.) All the Contracts mandate the application of the ICC Rules. This demonstrates a clear and obvious intention to arbitrate the arbitrability of the contracts. In accordance with applicable and controlling law, this action should be dismissed and the dispute should be arbitrated pursuant to the terms of the contracts.

>   B.   The FAA Applies to the Present Dispute and Strongly Favors the
>        Arbitration of Disputes.

The Federal Arbitration Act, 9 U.S.C. § 1, et seq., was enacted on February 12, 1925. Where a contract affecting interstate commerce contains an arbitration provision, Section 2 of the FAA makes such written arbitration agreement "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." In re A2P, 972 F.2d at 474 (citing Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 629-30, 129 S.Ct. 1896 (2009); quoting 9 U.S.C. § 2). Meanwhile, Section 3 "entitles litigants in federal court to a stay of any action that is 'referable to arbitration under an agreement in writing.'" Id. (citing Arthur Andersen, 556 U.S. at 625; quoting 9 U.S.C. § 3).

It is undisputable that "there is a strong and 'liberal federal policy favoring arbitration agreements.'" Thomson-CSF, S.A. v. Sm. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1955) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625, 105 S.Ct. 3346 (1985)). Based upon this policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." JLM

Industries, Inc. v. Stolt—Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004) (quoting Moses H. Cone Me'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927 (1983)).

This matter involves contracts for the purchase and sale of fine wines and champagnes between a British Virgin Islands corporation and a United States citizen.  These Contracts were executed by Eisen and either defendant Cadman or Trotter on behalf of Venulum.  Plaintiff has not disputed, and in fact acknowledges, that he signed contracts containing arbitration provisions to which he was bound.  (ECF Dkt. 1, Compl. at ¶¶ 46-47.)    Further, it is clear from the allegations contained in Plaintiff's Complaint that this dispute involves the contracts at issue which directly affect interstate commerce.  As such, the FAA applies to this dispute, and the written arbitration agreements between Eisen and Venulum are "valid, irrevocable, and enforceable." 9 U.S.C. § 2.

C.    This Litigation Should Be Dismissed Pursuant to the Doctrine of Equitable Estoppel.

In general, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  In re A2P SMS Antitrust Litigation, 973 F. Supp. 2d 465, 473 (S.D.N.Y. 2013) (quoting Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91, 121 S.Ct. 513 (2000)).  In resolving a defendant's motion to compel arbitration, courts accept as true the factual allegations in the plaintiff's complaint that relate to the underlying dispute.  Id. (citing Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012); Lismore v. Societe Generale Energy Corp., No. 11 Civ. 6705(AJN), 2012 WL 3577833, at *1 (S.D.N.Y. Aug. 17, 2012)).  The first question to be addressed by courts considering the application of the equitable estoppel test in arbitration disputes is whether the plaintiff's claims arise from the subject matter the agreement at issue.  Id. at 477.

Where issues raised in litigation are clearly intertwined with the contract that includes arbitration provisions, courts have compelled arbitration based on the relationship between the facts of the case and the contract.  Denney v. Jenkens & Gilchrist, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005)).  "Claims are intertwined where the merits of an issue between the parties [are] bound up with a contract binding one party and containing an arbitration clause." Id.  In Usina Costa Pinto S.A. Acucar E Alcool v. Louis Dreyfus Sugar Co., 933 F. Supp. 1170 (S.D.N.Y. 1996), for instance, the Court granted the defendant's motion to compel arbitration under an estoppel theory, noting that the defendant—though a nonsignatory to the arbitration contract—had negotiated the relevant contract with plaintiff and there was an "integral link between the . . . claim asserted in the litigation and the underlying contractual obligations. . . ." Id. at 1179.

Here, Plaintiff asserts causes of action for violations of the Securities Exchange Act of 1934 and the New York Uniform Commercial Code, as well as fraud, civil conspiracy, and intentional infliction of emotional distress, each of which allegedly arose out of the contracts entered into by and between Eisen and Venulum.  It is undisputable that these claims arose from and are clearly intertwined with the subject matter of the agreements: the purchase and sale of fine wines and champagnes.

    D.    The Inclusion of Non-signatories to the Contracts as Defendants in this Litigation Does Not Preclude Arbitration of this Dispute.

"The second prong of the equitable estoppel test looks at whether there exists a sufficiently 'close relationship' between the signatory and the non-signatory who seeks to compel arbitration." Id. at 478 (quoting Lismore, 2012 WL 3577833, at *7; Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 359 (2d Cir. 2008); Ragone v. Atl. Video at Manhattan Ctr., No. 07 Civ. 6084 (JGK), 2008 WL 4058480, at 12728 (S.D.N.Y. Aug. 29, 2008)).

Consistent with the "strong federal policy favoring arbitration as an alternative means of dispute resolution," Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001), the Second Circuit has recognized that not only may a signatory to an arbitration agreement, such as Defendants Venulum, Trotter, and Cadman here, compel arbitration, but also a non-signatory to the arbitration agreement, such as Serrien, may compel arbitration of claims brought by a signatory to the agreement, such as Eisen. "[U]nder the principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the 'relationship among the parties, the contracts they signed . . . , and the issues that had arisen' among them discloses that 'the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" JLM Inds., Inc., et al. v. Stolt-Nielsen, SA, 387 F.3d 163, 178 (2d Cir. 2004) (quoting Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co., 271 F.3d 403, 406 (2d Cir. 2001)). Further, the Second Circuit has held that a party attempting to resist arbitration is estopped from doing so where it treats non-signatories and signatories "as a single unit" in its complaint. Id.

Here, Eisen agreed to arbitrate any dispute over the wine contracts with Venulum. These contracts were signed by Eisen and by either Trotter or Cadman as representatives of Venulum. Serrien is the sole non-signatory defendant, and Plaintiff alleges that Serrien was an employee or agent of Venulum for "all relevant times," and joins Serrien to the causes of action alleged. (ECF Dkt. 1, Compl. at ¶ 9.) All Defendants seek to compel the arbitration of this dispute, and because all Defendants were either signatories to the arbitration agreements or the employee or agent of the signatory, the relationships between the parties are sufficient to enforce such arbitration provisions.

Eisen cannot use the addition of non-signatory defendants to avoid his agreed-upon obligation to arbitrate this dispute.[2]   Rather, not only may the signatory defendants Venulum, Cadman, and Trotter compel arbitration, but even Serrien, the non-signatory defendant, may compel arbitration of this dispute.  To that end, this matter should be arbitrated and this litigation should be dismissed.  See Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC, 371 F. Supp. 2d 571 (S.D.N.Y. 2005) (granting motion to dismiss litigation that was subject to arbitration); Better Benefits, Inc. v. Protective Life Ins. Co., No. 03 Civ. 2820 (LAP), 2004 WL 633730, at *5 (S.D.N.Y. Mar. 30, 2004) (same).  Plaintiff is equitably estopped from avoiding the arbitration provision by bringing litigation against non-signatories to the Contracts.

## II.   THIS LITIGATION SHOULD BE STAYED PENDING RESOLUTION OF THE ARBITRATION BETWEEN PLAINTIFF AND DEFENDANTS.

Even if the Court does not dismiss this action altogether, at a minimum, arbitration should be ordered, and this litigation should be stayed pending resolution of this matter in such a proceeding.

Courts routinely stay litigation where, as here, arbitration or another alternative dispute resolution is pursued that may resolve the disputes at issue in the litigation.  See e.g., Norcom Electronics Corp. v. CIM USA Inc., 104 F. Supp. 2d 198 (S.D.N.Y. 2000).  Four factors must be considered in determining whether a court should compel arbitration pursuant to the FAA. Courts must consider: (1) whether the parties agreed to arbitrate; (2) the scope of the arbitration agreement; (3) whether Congress intended the federal statutory claims asserted by the plaintiff to be nonarbitrable; and (4) where only certain claims are arbitrable, whether the court should stay the balance of the proceedings pending arbitration.  Id. (citations omitted).  Stays are particularly appropriate where they "promote judicial economy" and assist in the "avoidance of confusion

---

[2] Defendants in no way waive the argument that Plaintiff's claim are or may have been waived in full or in part by his failure to raise them in a timely manner, as proscribed by the contract.

and possible inconsistent results." <u>Orange Chicken, LLC v. Nambe Mills, Inc.</u>, No. 00 Civ. 4730(AGS), 2000 WL 1858556, at *9 (S.D.N.Y. Dec. 19, 2000).

There is no dispute that the parties executed several agreements that included clear arbitration provisions.  The arbitration agreements explicitly state that "any dispute whatsoever . . . arising out of or in relation to this Agreement" must be referred to binding arbitration.  Claims brought under the Securities and Exchange Act are arbitrable under the provisions of the FAA. <u>Shearson/American Exp., Inc. v. McMahon</u>, 482 U.S. 220, 220, 107 S.Ct. 2332 (1987).  There is no statute or law precluding arbitration involving claims of fraud, civil conspiracy, and intentional infliction of emotional distress.  As such, all claims in the Complaint are arbitrable; all parties to the action are appropriate parties to an arbitration of this dispute; the dispute arises out of or is in relation to the contracts; and the parties agreed to arbitrate any dispute arising out of the contracts.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court compel arbitration of the dispute between the parties and dismiss this litigation, or, in the alternative, stay this litigation pending arbitration.

ELLENOFF GROSSMAN & SCHOLE LLP
Atul R. Singh
Michael J. Sullivan (Admission Pending)
Glen A. Sproviero (Admission Pending)
1345 Avenue of the Americas
New York, New York 10105
Telephone: 212.370.1300
Facsimile: 212.370.7889
asingh@egsllp.com
msullivan@egsllp.com
gsproviero@egsllp.com
*Attorney for Defendants Venulum, Ltd., Giles Cadman, Mark Trotter, and Philip Serrien*