UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BERNARD M. EISEN, DDS,

                Plaintiff,

    v.

                                       Civil Action No. 1:16-cv-461

VENULUM LTD., GILES CADMAN, individually,
MARK TROTTER, individually, and PHILLIP
SERRIEN, individually,

                Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL ARBITRATION**

KAVINOKY COOK, LLP
*Attorneys for Plaintiff*
726 Exchange St., Suite 800
Buffalo, New York 14210

David G. Brock, Esq.
   Of Counsel

TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT                                                                        1

II.  STATEMENT OF FACTS                                                                           1

III. STANDARD OF REVIEW                                                                           5

IV.  ARGUMENT                                                                                     5

   A.  THE ARBITRATION PROVISIONS IN THE INVESTMENT CONTRACTS                                     5
       ARE UNENFORCEABLE.

   1.  Plaintiff is Entitled to Judicial Determination of the Validity of the Arbitration         6
       Provisions.

       a.  The arbitration provisions do not delegate the question of their own                  6
           validity and enforceability to an arbitrator.

       b.  The arbitration provisions that delegate the question of their own validity            9
           and enforceability to an arbitrator are unconscionable and unenforceable.

   2.  Each of the Arbitration Sections of the Investment Contracts are Void and                 12
       Unenforceable.

       a.  The Third Investment Contract                                                         14

       b.  The Second Investment Contract                                                        16

       c.  The First Investment Contract                                                         17

   B.  DEFENDANTS' REQUESTED RELIEF CANNOT BE GRANTED.                                           18

   1.  The Federal Arbitration Act Does Not Support Dismissal of this Case.                      18

   2.  Defendants Inappropriately Request an Order Compelling Arbitration.                       18

   3.  Defendants' Motion to Dismiss this Case is Effectively a Motion for Improper             19
       Venue, Precluding any Subsequent Motion Pursuant to Rule 12(g)(2).

V.  CONCLUSION                                                                                    20

## TABLE OF AUTHORITIES

**Cases**

Apollo Computer v. Berg, 886 F.2d 469 (1st Cir. 1989) .................................................. 8

Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002)................................ 15

Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003)............. 12

DaPuzzo v. Globalvest Mgmt. Co., L.P., 263 F. Supp. 2d 714, 744 (S.D.N.Y. 2003)........... 18, 19

Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 207 (2d Cir. 1999) ....................... 12

DuBois v. Macy's East Inc., 338 F. App'x 32, 33 (2d Cir. 2009) ..................................................... 5

Ferenc v. Brenner, 927 F. Supp. 2d 537, 550 (N.D. Ill. 2013) ....................................................... 19

First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944–45 (1995)......................................... 7, 9

Gillman v. Chase Manhattan Bank N.A., 73 N.Y.2d 1, 12 (1988).............................................. 13

Gingras v. Rosette, No. 5:15-cv-101, 2016 U.S. Dist. LEXIS 66833, at *51 (D. Vt. May 18, 2016) ............................................................................................................ 11, 12, 14

Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299–300 (2010) ............................... 6

Hayes v. Delbert Services Corp., 811 F.3d 666, 676 (4th Cir. 2016)...................................... 12,14

Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1180 (9th Cir. 2003) ................................. 10, 16

Katz v. Cellco P'ship, 794 F.3d 341, 346 (2d Cir. 2015)................................................................ 18

Lismore v. Société Générale Energy Corp., 2012 U.S. Dist. LEXIS 118157, at *2 (S.D.N.Y. Aug. 17, 2012) ............................................................................................................ 5

McMullen v. Meijer, Inc., 355 F.3d 485, 494 (6th Cir. 2004)....................................................... 17

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 637 (1985)................. 11,13

Moss v. BMO Harris Bank, N.A., 24 F. Supp. 3d 281, 285 (E.D.N.Y. 2014) ................................ 5

NML Capital v. Republic of Argentina, 621 F.3d 230, 237 (2d Cir. 2010) ................................. 12

Orion Shipping & Trading Co. v. E. States Petroleum Corp., 284 F.2d 419, 421 (2d Cir. 1960) .............................................................................................................................. 16

Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 487 (2d Cir. 2013) ....................................... 13, 16

Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 229–30 (3d Cir. 2012) .................... 11

Ragone v. Atl. Video, 595 F.3d 115, 122 (2d Cir. 2010) ........................................................ 13, 17

Rent-A-Center., W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) ............................................. 6,7,9,11

Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993).............................................. 14,15

Robinson v. Entm't One US LP, No. 14-cv-1203 (AJN), 2015 U.S. Dist. LEXIS 71117, at *11
(S.D.N.Y. June 2, 2015)............................................................................................................ 18

Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115 (2d Cir. 2003) ....................................... 8

Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 233 (1987)................................. 13

The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10–15, 18 (1972) ......................................... 14

Tompkins v. 23andMe, Inc., No. 5:13-CV-05682-LHK, 2014 U.S. Dist. LEXIS 88068, at *50
(N.D. Cal. June 25, 2014) ............................................................................................................. 9

Virk v. Maple-Gate Anesthesiologists, P.C., No. 15-513-cv, 2016 U.S. App. LEXIS 12117,
at *2 (2d Cir. July 1, 2016) ........................................................................................................ 18

VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P. ...................... 7

**Statutes**

9 U.S.C. § 2.................................................................................................................................... 6

9 U.S.C. § 4.................................................................................................................................. 19

9 U.S.C.S. § 201........................................................................................................................... 19

9 U.S.C.S. § 206........................................................................................................................... 19

28 U.S.C.S. § 1450....................................................................................................................... 17

**Rules**

Fed. R. Civ. P. 12 .................................................................................................................. 19, 20

## I. Preliminary Statement

Plaintiff, Bernard M. Eisen, DDS, respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration and to Dismiss or Stay this Litigation. Defendants have long been engaged in an ongoing scheme to defraud investors, including Dr. Eisen, in violation of United States securities law and several court orders. When Dr. Eisen discovered finally who and what he was really dealing with, Defendants coerced him into signing the third in a series of contracts under threat of losing his entire investment. Now that they are finally being held to account for their illegal actions, Defendants point to the Federal Arbitration Act in a continuation of their efforts to evade Federal securities law. Their reliance on the FAA, however, is misplaced, and their efforts to enforce their unconscionable contracts unavailing.

Defendants' Motion should be denied in all respects. The arbitration agreements in each of the three contracts are unenforceable; each is independently void, and there is no bar to this Court determining so for itself. Even if one of the arbitration clauses were to be found to be valid, this Court does not have the jurisdiction to compel arbitration in the British Virgin Islands as Defendants request.

## II. Statement of Facts

As detailed in the Complaint, this case concerns Defendants' scheme to defraud Dr. Eisen in blatant disregard for his rights under American law, including all Federal and New York State laws governing the sale of securities and the regulation of brokers. After repeatedly calling Dr. Eisen at his home in Williamsville, New York, beginning in 2007, Defendants eventually persuaded Dr. Eisen to make two trial amounts of non-contract investments in the purchase of wine. Compl. ¶¶ 14–22. These initial investments were not made pursuant to any written

1

contracts. After several telephonic investments, on March 29, 2007, at Defendant Serrien's

insistence, Dr. Eisen ultimately entered into the first of three contracts with Defendant Venulum

Ltd. Compl. ¶¶ 25– 33.

The first agreement is the "Venulum Ltd. Account Opening Form and Terms &

Conditions," signed March 29, 2007, with Purchase Contract No. 15066 dated October 7, 2008.

ECF No. 1-2, Ex. B ("First Investment Contract"). The arbitration provision in that contract

provides:

> **Arbitration:** In the event that any dispute whatsoever arises between the Client
> and Venulum Ltd. in relation to or in any way in connection with this Agreement,
> the Client and Venulum Ltd. hereby agree that such dispute shall be referred to
> binding arbitration in the British Virgin Islands applying British Virgin Islands
> law: Such arbitration shall be before one arbitrator appointed by the Client, one
> arbitrator appointed by Venulum Ltd. and one arbitrator appointed by such two
> arbitrators, if either or both of them considers it appropriate: The Arbitrators'
> costs will be borne equally by the Client and Venulum Ltd.: The arbitration shall
> take place in accordance with the Rules of the International Chamber of
> Commerce.
>
> If the claim to be arbitrated is a claim by the Client, then unless the Client's
> arbitrator is appointed within six months of the dispute arising, such claim shall
> be deemed to be absolutely released, waived and barred and Venulum Ltd. shall
> be discharged from all liability.

Between October 7, 2008 and March 16, 2010, Dr. Eisen invested approximately $122,480.64

under the First Investment Contract. Compl. ¶ 36.

Defendant Serrien led Dr. Eisen to understand that his investment could be fully

liquidated at any time by a simple telephone request; Dr Eisen made a request to do so in early

2010. Compl. ¶¶35, 38. Defendant Trotter then began contacting Dr. Eisen on behalf of

Defendant Venulum, and told him that he would have to sign another contract to get his money

back. Compl. ¶¶ 39–42.  After being threatened with the loss of all or substantially all of his

investment, and being repeatedly called at home at night by Defendant Trotter, Dr. Eisen signed

the "Agreement Between Venulum Ltd. & Dr. Bernard M. Eisen, DDS, dated March 16, 2010.

Compl. ¶ 45; ECF No. 1-3, Ex. C ("Second Investment Contract"). That arbitration clause

provides:

> **Arbitration.** In the event that any dispute whatsoever arises between the parties
> in relation to or in any way in connection with this agreement, the Parties hereby
> agree that such dispute shall be referred to binding arbitration in the British Virgin
> Islands applying British Virgin Islands law. Such arbitration shall be before an
> arbitrator appointed by Venulum. The arbitration shall take place in accordance
> with the Rules of the International Chamber of Commerce.

Defendants led Dr. Eisen to believe he would have to invest an additional $100,000 under the

Second Investment Contract and would then be returned his previously invested $122,480, and

have $100,000 in wine with Venulum that would appreciate and pay a return upon sale. Compl.

¶¶ 50–51. Dr. Eisen was led believe he had no choice but to continue this investment program or

lose his entire investment based on the arbitration provisions of the Second Investment Contract.

Compl. ¶¶ 48–49. Dr. Eisen believed he had no apparent recourse against the foreign Defendants

and was facing a total loss of his investment, so he accelerated the payment of the additional

$100,000 investment in order to end his relationship with Defendants as soon as possible.

Compl. ¶ 53.

Defendants have a long history of being subject to regulatory actions in their business of

marketing investment contracts for the purchase and sale of wine using offshore entities and

evading securities laws. Compl. ¶ 11. Dr. Eisen became of aware of Defendants Cadman and

Venulum's 2012 SEC Consent Order in October, 2013, and then emailed Defendant Trotter to

request the return of his money and liquidation of his account. Compl. ¶¶ 79–80. Dr. Eisen was

told that he had to enter yet another contract to "tidy up" the terms of his investment, that the

new contract would not materially change the terms of the deal he had with Venulum, and that

the new contract had to be executed immediately or Dr. Eisen would lose his entire investment,

which was then over $200,000. Compl. ¶¶ 79–84.  Venulum rejected all efforts to modify the

contract. Compl. ¶ 164.

In the face of these high-pressure tactics, on October 3, 2013 Dr. Eisen was coerced to

enter this new contract under the extreme duress of losing his entire investment. Compl. ¶¶ 86,

162–63. The "Fine Wine Master Purchase Agreement" dated October 3, 2013, ECF No. 1-9, Ex.

I ("Third Investment Contract"), contained an arbitration clause providing:

> **Arbitration.** In the event that any dispute whatsoever arises between the
> Contractholder and the Company in relation to or in any way in connection with
> the Contract, the Contractholder and the Company hereby agree that such dispute
> shall be finally settled by binding arbitration in the British Virgin Islands applying
> British Virgin Islands law in accordance with the Rules of Arbitration of the
> International Chamber of Commerce ("ICC Rules"). Such arbitration shall be
> conducted before a panel of three (3) arbitrators, one of whom shall be appointed
> by the Contractholder, one of whom shall be appointed by the Company and the
> third arbitrator shall be appointed by the other arbitrators so chosen. If the
> arbitrators chosen by the parties ("Party Arbitrator(s)") fail to agree upon the
> appointment of the third arbitrator within one month after the second Party
> Arbitrator is appointed, the third arbitrator shall be appointed in accordance with
> the ICC Rules. If a claim arising under the Contract may be arbitrated by the
> Contractholder, then, unless the Contractholder's arbitrator is appointed within 6
> months of the issuance of the request for arbitration, such claim arising under the
> Contract shall be deemed to be absolutely released, waived, and barred and the
> Company shall be discharged from all liability. If the claim to be arbitrated is
> asserted by the Company, then, unless the Contractholder's arbitrator is appointed
> within 6 months of the issuance of the request for arbitration, the arbitration shall
> be determined by a single arbitrator appointed in accordance with the ICC Rules.
> Each party to the arbitration proceeding shall be responsible for payment of one-
> half of the costs, arbitrators' fees and other expenses of the arbitration until a
> decision by the arbitration panel is rendered. If any party fails to pay its share of
> such fees and expenses of the arbitration when due, the arbitration panel shall
> have the power immediately to issue an award in favor of the other party for the
> relief requested by such party. The parties hereto agree that any judgment,
> settlement or award rendered pursuant to such arbitration shall be a final and
> binding determination as to such matters described therein, and a judgment of any
> court having jurisdiction thereof shall be entered upon the award made pursuant to
> the arbitration. The arbitration panel shall not have the authority to award punitive
> damages. Notwithstanding the foregoing, if either party to this Agreement is
> named by a third party as a defendant in any action or proceeding, the party
> named as a defendant shall be entitled to assert against the other party to the
> Contract in such action or proceeding any claim which such party may have at

4

law or equity and which arises out of the matter in controversy in such action or proceeding.

This arbitration provision was a clear attempt by Defendants to deny Dr. Eisen his rights under Federal and New York securities laws, and laws and regulations related to brokers. Compl. ¶¶ 174–76.

### III. Standard of Review

"In a typical motion to compel arbitration, the Court would apply a standard similar to that of a summary judgment motion, DuBois v. Macy's East Inc., 338 F. App'x 32, 33 (2d Cir. 2009), and some discovery may be allowable or necessary." Lismore v. Société Générale Energy Corp., 2012 U.S. Dist. LEXIS 118157, at *2 (S.D.N.Y. Aug. 17, 2012). When a defendant moves to compel arbitration before discovery has taken place, however, and in the context of a motion to dismiss, the court is to accept the allegations in the complaint as true. Id. At *3 ("In this instance, the Court permitted Defendant to move for dismissal in favor of arbitration prior to the taking of any discovery on the premise that arguments would be based only on allegations contained in the Compliant."); Moss v. BMO Harris Bank, N.A., 24 F. Supp. 3d 281, 285 (E.D.N.Y. 2014). In that light, there is no basis in law or fact for the dismissal of this Complaint, an order compelling arbitration in the British Virgin Islands, or staying this action.

### IV. Argument

**A. THE ARBITRATION PROVISIONS IN THE INVESTMENT CONTRACTS ARE UNENFORCEABLE.**

Defendants' Motion rests on the faulty premise that any (or each) of the distinct arbitration sections of the Investment Contracts is enforceable. As this Memorandum sets out, this Court is empowered to hear Plaintiff's challenges to the arbitration provisions, and must deny Defendants' Motion based on the fraud, economic duress, and unconscionability that render each of the arbitration provisions void and unenforceable.

1.  **Plaintiff is Entitled to Judicial Determination of the Validity of the Arbitration Provisions.**

    a.  ***The Arbitration Provisions do not delegate the question of their own validity and enforceability to an arbitrator***

    There is no bar to this Court hearing Plaintiff's challenges to the validity and

enforceability of provisions within the arbitration sections of the Investment Contracts. Under

the Federal Arbitration Act,

> A written provision in . . . a contract evidencing a transaction involving commerce
> to settle by arbitration a controversy thereafter arising out of such contract . . .
> shall be valid, irrevocable, and enforceable, save upon such grounds as exist at
> law or in equity for the revocation of any contract.

9 U.S.C. § 2. Arbitration agreements are on an equal footing with other contracts under the FAA,

and thus may "be invalidated by generally applicable contract defenses, such as fraud, duress, or

unconscionability." Rent-A-Center., W., Inc. v. Jackson, 561 U.S. 63, 68 (2010).

The law is clear that the validity of an arbitration provision is a matter for judicial

determination. "[C]ourts should order arbitration of a dispute only where the court is satisfied

that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision

specifically committing such disputes to an arbitrator) its enforceability or applicability to the

dispute is in issue. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299–300 (2010)

(emphasis in original). "Where a party contests either or both matters, the court must resolve the

disagreement." Id. Put otherwise, "[i]f a party challenges the validity under [FAA] § 2 of the

precise agreement to arbitrate at issue, the federal court must consider the challenge before

ordering compliance with that agreement." Rent-A-Center, 561 U.S. at 71.

Although parties may make a separate agreement to arbitrate the validity or enforceability

of a larger arbitration agreement, the requirements of such an agreement are strictly construed.

The ordinary presumption in favor of arbitration under the Federal Arbitration Act is *reversed*

when determining whether it will be a court or an arbitrator who decides on the arbitrability of an

6

issue. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944–45 (1995). Questions of

arbitrability (meaning whether or not a dispute is to be arbitrated) are to be referred to an

arbitrator "if and only if the parties clearly and unmistakably expressed their intention to do so."

VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P., 717 F.3d 322,

325 (2d Cir. 2013) (citing First Options, 514 U.S. at 945). An additional agreement to arbitrate

the enforceability of an arbitration agreement may be made in a delegation provision that

explicitly refers that issue to arbitration. Rent-A-Center, 561 U.S. at 68–69.

　　　　No provision in any of the arbitration sections of the Investment Contracts provides a

clear and unmistakable expression of intent that an arbitrator is to decide Plaintiff's challenges to

the validity and enforceability of an arbitration agreement. There is no delegation provision

referring the enforceability or validity of an arbitration provision to arbitration. Defendants point

to the generic language of the arbitration sections that "[i]n the event that any dispute whatsoever

arises . . . in relation to or in any way in connection with" the contracts, the parties "agree that

such dispute shall be [referred to] binding arbitration in the British Virgin Islands applying

British Virgin Islands law" in accordance with the Rules of the International Chamber of

Commerce ("ICC"). However, none of the cases they cite in support of this language deal with

the enforceability of the arbitration agreement.

　　　　Any argument that by referencing the ICC Rules of Arbitration (the "ICC Rules"), the

parties agreed to arbitrate any challenge to the enforceability of the arbitration provisions fails.

Article 6(3) of the ICC Rules, available at http://www.iccwbo.org/products-and-

services/arbitration-and-adr/arbitration/icc-rules-of-arbitration/#article_6, states that

> If any party against which a claim has been made does not submit an Answer, or
> raises one or more pleas concerning the existence, validity or scope of the
> arbitration agreement or concerning whether all of the claims made in the
> arbitration may be determined together in a single arbitration, the arbitration shall
> proceed and any question of jurisdiction or of whether the claims may be

determined together in that arbitration shall be decided directly by the arbitral
tribunal, unless the Secretary General refers the matter to the Court for its
decision pursuant to Article 6(4).

Defendants point to <u>Shaw Group, Inc. v. Triplefine Int'l Corp.</u>, 322 F.3d 115 (2d Cir. 2003), to

suggest that the arbitrator would decide the issue of arbitrability. Defs.' Mem. 5. <u>Shaw Group</u>

followed a First Circuit case, <u>Apollo Computer v. Berg</u>, 886 F.2d 469 (1st Cir. 1989), which

similarly determined that the ICC rules meant the arbitrator decided arbitrability. However, the

ICC Rules were amended since those cases were decided, and the current provision is less

expansive than the provisions addressed in <u>Shaw Group</u> or <u>Apollo Computer</u>. In its current form,

ICC Rule 6.3 applies only "If any party *against* which a claim has been made . . . raises one or

more pleas concerning the existence, validity or scope of the arbitration agreement" (emphasis

added). Here, Plaintiff is the only party challenging the validity of the agreement; no claim has

been raised *against* him. In contrast, the previous incarnations of the ICC rules applied in <u>Shaw</u>

<u>Group</u> and <u>Apollo Computer</u> provided for the arbitrator to determine enforceability if *any* party

raised the issue of enforceability. <u>Shaw Group</u>, 322 F.3d at 122; <u>Apollo Computer</u>, 886 F.2d at

473. Accordingly, the ICC rules, if applied to this case, would not refer to an arbitrator

Plaintiff's challenges to the validity and enforceability of the arbitration provisions. At a

minimum, the modifications to the ICC rules since <u>Shaw Group</u> do not provide clear and

unmistakable evidence of the parties' intent to refer the issue of the validity and enforceability of

the arbitration provisions to arbitration. Even if the ICC rules were construed as a delegation

provision applicable to certain scenarios, the relevant section of the ICC Rules does not prohibit

this Court from determining Plaintiff's challenges to the validity of the various arbitration

provisions in this situation.

      Further, the bare reference to arbitration rules does not serve as an agreement to arbitrate

the enforceability of an arbitration agreement when both parties are not commercial entities.

Tompkins v. 23andMe, Inc., No. 5:13-CV-05682-LHK, 2014 U.S. Dist. LEXIS 88068, at *50

(N.D. Cal. June 25, 2014). Tompkins distinguished a bare reference to American Arbitration

Association Rules in an arbitration clause with the express delegation provision in Rent-A-

Center, supra, and went on to determine whether the challenged arbitration agreement was

unconscionable. Id. Thus, there is no clear and unmistakable evidence, based on the arbitration

provisions in the Investment Contracts, that overcomes the presumption that this Court may

determine the validity of the arbitration agreement and its provisions. See First Options, 514 U.S.

at 945.

Additionally, the final provision of the Third Investment Contract's arbitration section

explicitly allows a party to the Contract to implead and raise claims against another party to the

contract, as a third party plaintiff if they are named as a defendant by a non-party to the contract.

This provision undermines any argument that the arbitration provisions are so broad as to

completely preclude judicial determination, and further weighs against finding clear and

unmistakable evidence to prevent this Court from deciding the enforceability of the arbitration

provisions.

**b.  *The arbitration provisions that delegate the question of their own validity and***
.      ***enforceability to an arbitrator are unconscionable and unenforceable.***

Interpreting the arbitration provisions to delegate the question of validity and

enforceability of the arbitration sections of the Investment Contracts does not end the inquiry; in

line with Rent-A-Center, Plaintiff may, and does, challenge the validity of an inferred delegation

provision. See 561 U.S. at 74. Any inferred delegation cannot be enforced on the grounds that it

was obtained by the economic duress and fraud that infects the rest of the arbitration provisions,

but with the added intention to make it even more difficult for Plaintiff to hold Defendants to

account. Defendants are requiring Dr. Eisen to submit to arbitration in the British Virgin Islands,

applying British Virgin Islands law, merely to get a determination on the enforceability of an

arbitration agreement that was entered into in New York, through interactions that incessantly targeted him in New York. In so doing, Defendants are using an inferred delegation provision as yet another onerous barrier to judicial review of an issue which otherwise would be available as a threshold matter in an American court. This conduct only continues their practice of repeatedly adding artificial hoops for Dr. Eisen to jump through before he can even seek to get his investment back. E.g., Compl. ¶ 42 ("Trotter later told Plaintiff that he could liquidate his account after a period of time, but that first he had to enter into a second investment contract.").

The cost to Dr. Eisen of being forced to arbitrate the threshold matter of enforceability would be quite burdensome. Taking just the relief Plaintiff requests for Count 1 of the Complaint, $220,000 plus an award of treble damages for a total of $880,000, and applying ICC Rules Article 36 (Advance to Cover the Costs of the Arbitration) and Appendix III (Arbitration Costs and Fees), and as calculated using the ICC's online Cost Calculator, available at http://www.iccwbo.org/products-and-services/arbitration-and-adr/arbitration/cost-and-payment/Cost-calculator/, results in an estimated $129,071 advance on costs that would be required between all the parties. Dr. Eisen could expect to have to pay at least $32,267.75 of his share at the outset as a provisional advance. See Advances on Costs, ICC, http://www.iccwbo .org/Products-and-Services/Arbitration-and-ADR/Arbitration/ICC-Arbitration-process/ Advances-on-costs ("Current practice indicates that the provisional advance is usually in the range of 25-35% of the advance as calculated for the entire arbitration.").

While "the FAA articulates a strong policy in favor of arbitration agreement," that "policy is manifestly undermined by provisions in arbitration clauses that seek to make the arbitration process itself an offensive weapon in one party's arsenal." Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1180 (9th Cir. 2003).

As alleged in the Complaint, and more fully discussed below, the arbitration provisions are crafted to preclude any protections for Dr. Eisen as an investor under Federal or state securities laws. Compl. ¶¶ 174, 175. Even if the provisions of the arbitration sections could be construed as delegating the issue of enforceability to an arbitrator, they are void as part of the Defendants' pattern of conduct to insulate them from review of their wrongful scheme. This argument presents a separate challenge to the language of the arbitration sections to the extent they serve as a delegation provision and refer the decision on enforceability and validity to an arbitrator, creating an additional layer to shield defendants' improper activity.

When there is only one agreement to arbitrate, and no separate delegation clause as in Rent-A-Center, a Plaintiff can challenge the only agreement to arbitrate and the Court will determine whether the arbitration agreement is unconscionable. Quilloin v. Tenet HealthSystem Phila., Inc., 673 F.3d 221, 229–30 (3d Cir. 2012). Even considered separately, each additional barrier to Plaintiff litigating in this Court is an integral part of Defendants' patent scheme to ignore and circumvent the very laws that govern these transactions.

In Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 637 (1985), the Supreme Court noted that "in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."

Courts will refuse to enforce an arbitration clause when it represents "an obvious effort to deprive consumers of legal protections." Gingras v. Rosette, No. 5:15-cv-101, 2016 U.S. Dist. LEXIS 66833, at *51 (D. Vt. May 18, 2016). When an arbitration clause is drafted to avoid the basic protections of Federal or state law, and uses a choice of law provision to prevent the arbitrator from applying those protections, it is unenforceable as unconscionable. Id. at *54. In

11

Gingras, the plaintiffs challenged a payday loan scheme that used an arbitration clause (including

a delegation provision) that specified only tribal law would apply. The Court held that, because

the defendants used the tribal choice of law provision to insulate themselves from claims they

violated federal and state consumer protection law, their motion to compel arbitration should be

denied. Id. at 54–55. Gingras followed the ruling in Hayes v. Delbert Services Corp., 811 F.3d

666, 676 (4th Cir. 2016), which dealt with a similar claim and found an arbitration provision

invalid and unenforceable when "rather than use arbitration as a just and efficient means of

dispute resolution, [the defendant] seeks to deploy it to avoid state and federal law and to game

the entire system." As in Gingras and Hayes, Defendants here have crafted the arbitration

provisions, including any inferred delegation provisions, to avoid federal securities laws meant to

protect investors such as the Plaintiff, and they must not be allowed to game the system.

**2. Each of the Arbitration Sections of the Investment Contracts are Void and Unenforceable.**

"It is clear that questions of contractual validity relating to the unconscionability of the

underlying arbitration agreement must be resolved first, as a matter of state law, before

compelling arbitration pursuant to the FAA." Cap Gemini Ernst & Young, U.S., L.L.C. v.

Nackel, 346 F.3d 360, 365 (2d Cir. 2003). "[A] provision will be deemed unenforceable on

unconscionability grounds only where it is both procedurally and substantively unconscionable

when made." NML Capital v. Republic of Argentina, 621 F.3d 230, 237 (2d Cir. 2010) (internal

quotation marks omitted).  A contract is procedurally unconscionable "when there is an absence

of meaningful choice on the part of one of the parties." Desiderio v. Nat'l Ass'n of Sec. Dealers,

Inc., 191 F.3d 198, 207 (2d Cir. 1999). The contract is substantively unconscionable when the

terms unreasonably favor one of the parties. Ragone v. Atl. Video, 595 F.3d 115, 122 (2d Cir.

2010). "While determinations of unconscionability are ordinarily based on [a] conclusion that

both the procedural and substantive components are present, there have been exceptional cases

12

where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." Id. (quoting Gillman v. Chase Manhattan Bank N.A., 73 N.Y.2d 1, 12 (1988)). The arbitration provisions crafted by Defendants were done solely to disadvantage the Plaintiff by placing unreasonable and unconscionable barriers to his seeking relief from these onerous contracts. As such, the provisions clearly are unenforceable as a matter of law.

Courts also recognize that while statutory claims may be arbitrated, an arbitration agreement may only be enforced if it allows a prospective litigant to effectively vindicate his or her statutory rights. Mitsubishi, 473 U.S. at 637; Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 487 (2d Cir. 2013). "One of the principal considerations underlying the willingness of the Supreme Court to validate pre-dispute arbitration clauses in [disputes between customers and broker-dealers] is the fact that the SEC has been vested with expansive power to ensure the adequacy of arbitration procedures employed by the national securities exchanges and registered securities associations." Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 233(1987). Unlike Shearson, where the defendant was a brokerage firm registered with the SEC and the arbitration was to be conducted under the rules of either the National Association of Securities Dealers or a similar self-regulatory organization, the arbitration provisions contained in the Investment Contracts require that the arbitration be governed by foreign law, and would not be conducted pursuant to the rules of a self-regulatory organization under the supervision of the SEC. Further, as alleged in the Complaint, the Defendants have been operating for years as unlicensed broker-dealers and have deliberately evaded the rules and regulations of the SEC. Accordingly, the arbitration provisions constitute an impermissible waiver of the substantive protections of the Securities Exchange Act and are void.

13

As discussed below, in reverse order, the arbitration sections of the three Investment Contracts are unconscionable and unenforceable, and Defendants' Motion therefore must be denied.

### a. *The Third Investment Contract*

The arbitration clause of the Third Investment Contract is filled with unenforceable provisions. As set out in Gingras and Hayes and discussed above, the provisions, especially the choice of law provision, are unenforceable as having been drafted to "game the system" and avoid being held accountable for violations of Federal and state securities law. They are further unenforceable as procedurally and substantively unconscionable, for effectively barring Plaintiff from pursuing his statutory rights and remedies.

A forum selection or choice of law clause may only be enforced if it is not unreasonable under the circumstances. Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993). There are four situations where a forum selection or choice of law provision is unreasonable: "(1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party 'will for all practical purposes be deprived of his day in court,' due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state." Id. (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10–15, 18 (1972)). All four situations are implicated here.

As set forth in the Complaint and this Memorandum, the forum selection and choice of law provisions were fraudulently induced, and are the result of overreaching in that they were intended to shield Defendants' wrongdoing. The Investment Contracts themselves clearly contemplate the application of American securities regulations and attempt to carve out an exception to licensing and registration requirements; by requiring arbitration that would apply

14

only British Virgin Islands law, Defendants are attempting to have it both ways. Dr. Eisen would

be effectively denied his day in court, due to the grave inconvenience and hardship of being

forced to arbitrate this dispute exclusively in the British Virgin Islands. Unlike the individuals in

<u>Roby</u> who objected to litigating their dispute in England despite having purposefully gone to

London as part of the business in question, Dr. Eisen has never been to the British Virgin Islands

to transact business or otherwise; all of Defendants' conduct was targeted at him in New York.

<u>See</u> 996 F.2d at 1363. As to the third and fourth factors, enforcing a choice of law provision

applying British Virgin Islands law would present a clear danger that Dr. Eisen would be

deprived of remedies available to him under U.S. laws, and would subvert United States public

policy. <u>Id</u>. Permitting enforcement of the choice of law provisions in the arbitration section of the

Investment Contracts would go against the no-waiver provision of section 14 of the Securities

Act, and ignore Defendants' long history of consent orders with state and federal securities

regulators. <u>See</u> Compl. ¶¶ 8–12.

The Complaint clearly sets out the procedural unconscionability and economic duress

that infects the arbitration provisions of the Third Investment Contract. "While inequality in

bargaining power . . . is not alone sufficient to hold arbitration agreements unenforceable, such

inequality, when coupled with high pressure tactics that coerce [a signatory's] acceptance of

onerous terms, maybe[sic] sufficient to show that [the signatory] lacked a meaningful choice."

<u>Brennan v. Bally Total Fitness</u>, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002). Defendants did more

than use their bargaining power to obtain a favorable deal; they engaged in high-pressure tactics

to coerce Dr. Eisen into signing the contract immediately after he contacted them about his

discovery of the SEC Consent Order in October 2013, with the threat of illegally retaining

Plaintiff's entire investment made under, and before entering into, these contracts.

The arbitration provisions are onerous and substantively unconscionable; they are clearly drawn to unfairly burden Dr. Eisen and deny him the protections required by law. The arbitrator selection provisions do not bind the parties equally, and intentionally create barriers that would prevent Dr. Eisen from fairly litigating his claims. Under the arbitration clause, Venulum is discharged from all liability for *any* of Dr. Eisen's claims if he does not appoint his arbitrator within six months, but there is no mutual requirement on Venulum While it might be valid to proceed with a single arbitrator if one party does not appoint his arbitrator within an agreed time limit, Orion Shipping & Trading Co. v. E. States Petroleum Corp., 284 F.2d 419, 421 (2d Cir. 1960), the provisions here are unreasonably one-sided, provide different standards depending on who asserts the claim, and provide no corresponding sanction if Venulum delays in appointing its arbitrator. In this respect, the arbitration provisions reveal Defendants' lack of good faith in drafting the agreement. The provisions also unreasonably raise the costs and stakes of arbitration even higher for Dr. Eisen by allowing the tribunal to immediately issue an award for one party if the other fails to pay its full share of expenses when due.

Further, the provision barring punitive damages denies Plaintiff effective vindication of his rights to seek punitive damages for his statutory and common law causes of action. See Parisi, 710 F.3d at 487; Ragone, 595 F.3d at 125-26 (2d Cir. 2010). The adhesive nature of the arbitration provisions in the Third Investment Contract, together with their substantive unfairness "stack the deck unconscionably" in favor of Defendants. Ingle, 328 F.3d at 1180. Accordingly, they should not be enforced. Ragone, 595 F.3d at 126 ("Had the defendants attempted to enforce the arbitration agreement as originally written it is not clear that we would hold in their favor.").

### b. *The Second Investment Contract*

Plaintiff's arguments against the arbitration provisions of the Third Investment Contract apply to the Second Investment insofar as they share common language and reflect a similar

intent by Defendant's to protect their fraudulent enterprise and evade American laws. Dr. Eisen also signed the contracts under similar, but separate, procedurally unconscionable conditions of economic duress, with Defendants employing high pressure tactics and threatening him with the loss of his entire investment under the previous Investment Contract.

The Second Investment Contract's arbitration provisions are additionally substantively unconscionable in that only Venulum Ltd. may appoint the single arbitrator of its own choosing. When an arbitration provision "grants one party to the arbitration unilateral control over the pool of potential arbitrators," the arbitration is not an "effective substitute for a judicial forum because it inherently lacks neutrality," and therefore cannot be enforced as fundamentally unfair. McMullen v. Meijer, Inc., 355 F.3d 485, 494 (6th Cir. 2004).

### c.  *The First Investment Contract*

Plaintiff's arguments against the arbitration agreements in the Second and Third Investment Contracts apply similarly to the common language in the First Investment Contract, and Defendants' intent to evade the requirements of American law and protect their fraudulent enterprise. It is also unconscionable as plainly drafted to unreasonably favor Venulum at Dr. Eisen's expense. Not only does this arbitration provision unreasonably restrict the statute of limitations to 6 months, it further increases the burden on Dr. Eisen by requiring he appoint an arbitrator within that time frame, and not just interpose the claim. See Ragone, 595 F.3d at 125–26. Under 28 U.S.C § 1658, Dr. Eisen is entitled to at least two years, and up to five years, to bring his Federal statutory causes of action  Even more importantly, this provision only binds Plaintiff. The unconscionable terms and lack of mutual obligation render this arbitration provision unenforceable.

**B. DEFENDANTS' REQUESTED RELIEF CANNOT BE GRANTED.**

In a reflection of their disregard for American laws, Defendants ask this Court to dismiss this case and issue an order compelling Plaintiff to arbitrate this dispute in the British Virgin Islands. Defs' Mem. 6. Even if there exists a valid arbitration agreement, which is strenuously disputed, no section of the Federal Arbitration Act allows the Court to grant either form of relief to Defendants.

**1. The Federal Arbitration Act Does Not Support Dismissal of this Case.**

Even if a valid arbitration agreement were to exist, Section 3 of the Federal Arbitration Act only permits a stay, and not a dismissal, of a pending action. Katz v. Cellco P'ship, 794 F.3d 341, 346 (2d Cir. 2015). A stay is the only appropriate action for the Court if it finds a dispute referable to arbitration; there is no discretion to dismiss an action outright. Id.; Virk v. Maple-Gate Anesthesiologists, P.C., No. 15-513-cv, 2016 U.S. App. LEXIS 12117, at *2 (2d Cir. July 1, 2016). This applies even if the court cannot issue an order compelling arbitration. DaPuzzo v. Globalvest Mgmt. Co., L.P., 263 F. Supp. 2d 714, 744 (S.D.N.Y. 2003).

**2. Defendants Inappropriately Request an Order Compelling Arbitration.**

While Defendants' Memorandum of Law requests that the Court order that Plaintiff's claims be brought in arbitration, Defs.' Mem. 1, they fail to cite any provision of the Federal Arbitration Act that would permit such an order. None exists. The arbitration provisions of the Investment Contracts specify the British Virgin Islands as the only forum. 9 U.S.C. § 4, however, permits a district court to compel arbitration *only* within its own judicial district. Robinson v. Entm't One US LP, No. 14-cv-1203 (AJN), 2015 U.S. Dist. LEXIS 71117, at *11 (S.D.N.Y. June 2, 2015).

Any reliance on The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958 ("The New York Convention"), June 10, 1958, 21 U.S.T. 2517, codified at 9

U.S.C.S. § 201 et seq., is misplaced. An agreement to arbitrate "that designates a non-signatory

state as the forum for arbitration, does not qualify as an agreement within the meaning of the

Convention and the Enabling Act, and is thus not enforceable in federal courts in accordance

with its terms." DaPuzzo v. Globalvest Mgmt. Co., L.P., 263 F. Supp. 2d 714, 726 (S.D.N.Y.

2003). Thus, 9 U.S.C. § 206, which permits a court to order arbitration outside of the United

States, is not available when the agreement does not specify a signatory to the New York

Convention. Id. (refusing to compel arbitration in the Bahamas, a non-signatory). Since the New

York Convention was applied to the British Virgin Islands only after 2014, the arbitration

provisions of the Investment Contracts, which date to 2013 and earlier, are agreements that

designate arbitration in a non-signatory state, and may not be enforced by compelling arbitration

under 9 U.S.C. § 206. See Status – Convention on the Recognition and Enforcement of Foreign

Arbitral Awards, U.N. Comm'n on Int'l Trade L, http://www.uncitral.org/uncitral/en/uncitral

_texts/arbitration/NYConvention_status.html ("On 24 February 2014, the United Kingdom

submitted a notification to extend territorial application of the Convention to the British Virgin

Islands.").

### 3. Defendants' Motion to Dismiss this Case is Effectively a Motion for Improper Venue, Precluding any Subsequent Motion Pursuant to Rule 12(g)(2).

Defendants claim to reserve their right to make an additional motion under Fed. R. Civ.

P. 12(b), but in effect they have already made one. See Defs.' Mem. 1. To the extent Defendants'

request dismissal for Plaintiff's alleged failure to pursue this case in the proper forum, their

motion should properly be treated as a motion to dismiss for improper venue under Rule

12(b)(3). See, e.g., Ferenc v. Brenner, 927 F. Supp. 2d 537, 550 (N.D. Ill. 2013) (converting a

motion to compel arbitration that sought arbitration outside the judicial district into a motion to

dismiss for improper venue). Defendants have thus made the one motion permitted under Rule

12(g)(2), and have waived all other defenses under Rule 12(b)(2)–(5) pursuant to rule 12(h)(1)(A).

### V. Conclusion

Based on the foregoing, Defendants' Motion must be denied, and this case must go forward in this Court.

Dated: August 12, 2016

**Kavinoky Cook, LLP**

By: _David G Brock_

David G. Brock, Esq.
*Attorneys for Defendants*
726 Exchange St., Suite 800
Buffalo, New York 14210
Tel. No. 716-845-6000
dbrock@kavinokycook.com