

kavinoky cook
LLP

November 23, 2016

*Via Facsimile (585)613-4325*

Honorable Elizabeth A. Wolford
United States District Judge
United States District Court for the Western District of New York
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York 14614

    Re:   *Eisen v. Venulum Ltd. et al*
          Case No. 1:16-cv-461-EAW

Dear Judge Wolford:

    This letter is submitted in response to the Court's request to the parties to address certain issues raised at oral argument, on November 4, 2016, of Defendants' Motion to Compel Arbitration.

    The Defendants' approach to the contracts at issue in this case is they raise a simple commercial dispute. Such is not the case. The Defendants have been engaged in the sale of securities in the United States – an endeavor that is specifically regulated by the United States Securities Act of 1933, as amended, the United States Securities Exchange Act of 1934, as amended, and the ocean of regulations promulgated thereunder. The sale of securities in New York State is further regulated by New York law and the Investor Protection Bureau of the New York Attorney General's office. None of these statutes or regulations can be given effect by an arbitrator in the British Virgin Islands. Moreover, this case arises out of, and constitutes, an on-going fraudulent investment scam that depends upon the Defendants' successful evasion of United States laws and the United States courts.

    Under British Virgin Islands law, a plaintiff cannot recover for statutory civil liability, violations of American securities laws compelling registration of securities, or broker licensing and registration regulations; "the British Virgin Islands would follow the general position under English common law that a court will not enforce a foreign penal law, either directly or indirectly." See Reynolds Group Issuer Inc., <u>Prospectus Filed Pursuant to SEC Rule 424(b)(3)</u>, p. 354 (July 12, 2012), available at https://www.sec.gov/Archives/edgar/data/813134/000095012312010001/a94297b3e424b

full spectrum business law        726 EXCHANGE STREET SUITE 800 BUFFALO, NY 14210
TEL 716.845.6000 FAX 716.845.8474



3.htm#A94297123. Where an action "can only be based on a particular provision within the U.S. federal securities laws, for example, such action that may relate to strict reporting or registration requirements to particular bodies established under, or recognized by, such law (such as the SEC); it is very unlikely that such action would have extra-territorial effect unless specifically stated within that law and recognized as having such effect under British Virgin Islands law. Consequently, an investor [such as Plaintiff here] would not be able to bring such an action in the British Virgin Islands in those circumstances." Id.

The Defendant's Third Investment Contract is a one-sided recitation of provisions that protect the Defendants only, at considerable prejudice – and expense – to the Plaintiff. The cornerstone of the Third Investment Contract - indeed the principal reason for its existence - is the off-shore arbitration clause that represents the final and most important component of their overall scheme to evade United States laws and courts.

*The Contractual Validity of the Unconscionable Arbitration Clause is a Question for This Court.*

*There is no explicit delegation provision in the Third Investment Contract (or its predecessors) that would delegate to an arbitrator the issue of the enforceability of the arbitration clause.* The Court should not infer one based on the bare reference in the arbitration clauses to the International Chamber of Commerce Rules. See Tompkins v. 23andMe, Inc., No 5:13-CV-05682-LHK, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014).

"It is clear that questions of contractual validity relating to the unconscionability of the underlying arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003). Accordingly, Plaintiff's challenges, including generally applicable contract defenses directed at the arbitration provisions, are properly determined by the Court alone. Rent-A-Center, 561 U.S. at 68.

*New York Law Applies to Plaintiff's Challenges*

The Court need not analyze British Virgin Islands law of unconscionability because the choice of law and choice of forum sections of the arbitration clauses specifying the British Virgin Islands are unenforceable. At the outset however, it should be noted that the challenge of determining the British Virgin Islands law of unconscionability and arbitration reflects precisely the predicament that empowers the arbitration clauses to protect Defendants' violations of American Securities laws. The arbitration clauses in the first two

2



investment contracts had the purpose and effect of furthering Defendants' fraudulent scheme: Dr. Eisen's understanding based on the text of the second arbitration clause was that he could never get redress by challenging Defendants; his only option was to keep playing along. Defendants pulled Dr. Eisen further in to their scheme based on this planned confusion.

New York's choice-of-law rules apply in this case and require the application of New York law to Plaintiff's challenges to the arbitration clauses. In a federal question case, the court will apply the law of the jurisdiction having the greatest interest in the litigation. Martin Hilti Family Trust v. Knoedler Gallery, LLC, 137 F. Supp. 3d 430, 456 (S.D.N.Y. 2015) (citing In re Koreag, Controle et Revision S.A., 961 F.2d 341, 350 (2d Cir.1992)). "A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state." Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989). New York law would thus apply under any interpretation since New York has the greatest interest in this litigation:

> In a federal question action where a federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state. *See Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir.1989). Under New York choice-of-law rules, New York law properly applies to this case since the plaintiff is based in New York, the alleged harm occurred in New York, and the defendants do business in New York. *See Lazard Freres & Co. v. Protective Life Ins., Co.*, 108 F.3d 1531, 1539 (2d Cir.1997) (holding that New York applies the law of the state having the most significant contacts to the underlying transaction).

Manning Int'l Inc. v. Home Shopping Network, Inc., 152 F. Supp. 2d 432, 436 n. 3 (S.D.N.Y. 2001).

The Court need not analyze British Virgin Islands law concerning unconscionability, because the choice of law provisions in the arbitration clauses requiring British Virgin Islands law are unenforceable under both New York and Federal law. Under New York Law, "courts will not enforce agreements where the chosen law violates some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." Brown & Brown, Inc. v. Johnson, 25 N.Y.3d 364, 368–69 (2015) (internal citations omitted). The choice of law provision will not be enforced if a party proves that "application of the chosen law would be offensive to a fundamental public policy of this State." Id. (declining to enforce a Florida choice of law



provision that would have allowed an employer seeking enforcement of a restrictive covenant to avoid New York's stronger protections for employees).

As discussed in Plaintiff's Memorandum of Law (Document 11), the arbitration clause's choice of law provisions are unenforceable as unreasonable under federal law as the result of Defendants' fraud and overreaching because they would deprive Plaintiff of his day in court and deny him remedies afforded by federal statute, and because they contravene a strong public policy of the forum state. See Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993).

The choices of law provisions in the arbitration clauses patently seek to evade New York and federal securities law requirements, using British Virgin Islands law to prevent the application of statutory protections for investors. As stated above, under British Virgin Islands law, a plaintiff cannot recover for statutory civil liability, violations of American securities laws compelling registration of securities or broker licensing and registration regulations because "the British Virgin Islands would follow the general position under English common law that a court will not enforce a foreign penal law, either directly or indirectly." See Reynolds Group Issuer Inc., Prospectus Filed Pursuant to SEC Rule 424(b)(3), p. 354 (July 12, 2012), available at https://www.sec.gov/Archives/edgar/data/813134/000095012312010001/a94297b3e424b3.htm#A94297123. Where an action "can only be based on a particular provision within the U.S. federal securities laws, for example, such action that may relate to strict reporting or registration requirements to particular bodies established under or recognized by such law (such as the SEC); it is very unlikely that such action would have extra-territorial effect unless specifically stated within that law and recognized as having such effect under British Virgin Islands law. Consequently, an investor would not be able to bring such an action in the British Virgin Islands in those circumstances." Id. Thus, the choice of law provisions in the arbitration clauses are unenforceable and New York law applies.

*Defendants' Motion Fails in its Entirety for the Reasons Preventing Enforcement of the Third Arbitration Clause*

By its own terms requiring arbitration if "any dispute whatsoever arises between the Contractholder and the Company in relation to or in any way in connection with the Contract," third arbitration clause in the Third Contract necessarily supersedes the previous two. "Under New York law, it is well established that a subsequent contract regarding the same matter will supersede the prior contract." Applied Energetics, Inc. v. NewOak Capital Markets, LLC, 645 F.3d 522, 526 (2d Cir. 2011) (holding that a subsequent agreement to

4



adjudicate replaced a prior agreement to arbitrate in a dispute between a broker-dealer and issuer).

Even so, the first and second arbitration clauses fail on their own for the same reasons as the third. The British Virgin Islands choice of law provision is common to all three, and are intended to evade New York and Federal Securities laws. As discussed above, enforcing the arbitration provisions would effectively deny Plaintiff any vindication of his federal statutory rights with regard to violation of Section 15 of the Securities Exchange Act. See Mitsubishi Motors. Corp v. Soler Chrysler-Plymouth, 473 U.S. 614, 637 (1985). The arbitration clauses were plainly drafted to game the system against Dr. Eisen, not only because they substantively seek to avoid American Law, but because they were never enforceable under the FAA or New York Convention when signed. The Court's inability to order arbitration illustrates that the Defendants never intended the arbitration clauses to be enforceable as a means of settling a dispute; they just wanted to keep the Plaintiff out of a federal or New York court.

*Defendants Are Perpetrating a Fraudulent Scam*

Based upon what little information the Plaintiff has been able to receive, it appears that defendant Venulum did not even buy any of the wine it "agreed" to. The records provided by London City Bond of the wine held for the Plaintiff's account show wine cases having an aggregate value of approximately $8,000 on investments by the Plaintiff of over $200,000. Plaintiff obtained these records only because London City Bond, an independent party, sends him reports. The only records of the physical location of wine purchased for the Plaintiff that have been provided have been the reports (accompanied by bills) of London City Bond.

Defendants followed a pattern that is consistent with a investment scheme designed to sell securities in the United States through unregistered brokers while avoiding United States law and positioning themselves to avoid recourse in United States courts. As set forth in Plaintiff's Complaint, they used telephone calls originating from Canada to sell their "investment." They held investment proceeds off shore. They coaxed the Defendant into advancing incrementally larger and larger sums of money by cultivating a relationship of trust (over the telephone) and then, when they had a material sum of the Plaintiff's money in their possession, they used it as leverage to coerce him to sign the first investment contract, whose primary purpose was to insert off-shore arbitration as the only means for the Plaintiff to obtain redress. Having secured his signature on the first investment



contract, the pressure increased such that two subsequent investment contracts were signed, each with a more legally refined off-shore arbitration clause.

Defendants have never disclosed the basic business points of their purported "investment program", or how and when money is distributed to investors, if ever. There has been no disclosure of: (a) the sales commissions payable to the unlicensed brokers, Defendants Trotter and Serrien, for raising the money from Plaintiff, (b) the source of the wine to be purchased (and no prohibition on buying it from affiliates of Venulum), (b) the manner in which the wine is to be sold, including the negotiation of the Plaintiff's sales price (and no prohibition on selling it to affiliates of Venulum) and (d) the timing for the purchase of wine for the account of the Plaintiff (which apparently has barely happened at all) or (e) how the Plaintiff would ever receive his money back (much less a return on his investment). In fact, based upon his limited interaction with the Defendants and his difficulty in obtaining information, the Plaintiff has been led to conclude that Venulum has no intention of returning any of his money.

A significant factor in the Plaintiff's falling prey to the Defendant's investment scam was the lack of information about the Defendants available on the Internet. This seems incredible in the current information age. In fact, the Defendants settled prior regulatory enforcement actions (discussed in Plaintiff's brief) through consent orders. In so doing, the Defendants have maintained a low profile on the internet. While the consent orders themselves can be found, the substance of the actions is obscured by the vague language of the consent orders themselves and the Defendants have been able to take the position that they neither admitted nor denied culpability for securities law violations. Arbitration in the BVI is a confidential process in furtherance of Defendants' desire for invisibility. Litigation in this Court is not.

***Had the Defendant's Complied with the Basic Requirements of New York Securities Laws, They Would Have Stipulated to Jurisdiction in New York***

New York State Securities Laws applicable to the sale of all securities to the public, N.Y. Gen. Bus. L. § 359-e, specifies that issuers and their principals must either register an offering in New York or obtain an exemption from registration, in either case having filed a Form U-2 Consent to Service of Process that states in pertinent part:

> KNOW ALL MEN BY THESE PRESENTS: That the undersigned _____ (a corporation), (a partnership), a ( ) organized under the laws of



_____ or (an individual), [strike out inapplicable nomenclature] for purposes of complying with the laws of the States indicated hereunder relating to either the registration or sale of securities, hereby irrevocably appoints the officers of the States so designated hereunder and their successors in such offices, its attorney in those States so designated upon whom may be served any notice, process or pleading in any action or proceeding against it arising out of, or in connection with, the sale of securities or out of violation of the aforesaid laws of the States so designated; and the undersigned does hereby consent that any such action or proceeding against it may be commenced in any court of competent jurisdiction and proper venue within the States so designated hereunder by service of process upon the officers so designated with the same effect as if the undersigned was organized or created under the laws of that State and have been served lawfully with process in that State. (emphasis added)

Requiring arbitration in the British Virgin Islands, in effect, is a continuation of the original violations of applicable laws. If the Defendants had complied with the laws of New York, as required, they would necessarily have consented to the jurisdiction of New York courts. Had the Defendants complied with the Federal securities laws regulations, as required, the individual Defendants would properly be either before a FINRA arbitrator or this Court.

*Unconscionable Arbitration Clause*

By the time the Plaintiff executed the Third Investment Contract (which is the operable one), the Defendants were holding approximately $100,000 of the Plaintiff's investment, and aggressively asserted that the Plaintiff already had no recourse against them except through arbitration in the BVI.

Each iteration of the Investment Contracts' arbitration clause represented a refinement in Defendants' evasion of United States and New York law. Plaintiff was told that the third Investment Contract had to be entered merely to "tidy up" the terms of the investment and would not materially change the terms of the deal. Compl. ¶¶ 79–84. The goal was not to "tidy up", but to further lock down the misrepresentations previously made and contracts previously coerced.. To couch the arbitration clause as a separate component that must be independently unconsionable is to miss the point of the Third

7



Investment Contract; the heart of the Third Investment Contract is the off-shore arbitration clause.

*Plaintiff's Challenges to the Arbitration Clauses are for the Court to Decide*

As Plaintiffs prior Memorandum of Law set out, this Court can, and must, determine whether the arbitration clauses are enforceable. Plaintiff's challenges, further discussed below, are directed at the arbitration provisions themselves and thus in line with Federal Arbitration Act jurisprudence. "If a party challenges the validity under FAA § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 71 (2010).

*No Option to Dismiss.*

Plaintiff does not believe the Court has the option to dismiss this case, although we recognize that dismissal would create an appealable order. The Federal Arbitration Act only permits issuance of a stay, not dismissal, of a pending action. Katz v. Cellco P'ship, 794 F.3d 341, 346 (2d Cir. 2015). This applies even though the court cannot issue an order compelling arbitration. DaPuzzo v. Globalvest Mgmt. Co, L.P. 263 F. Supp. 2d 714, 744 (S.D.N.Y. 2003).

*Arbitration in the BVI is Prohibitively Expensive*

Arbitration in the BVI under the International Chamber of Commerce rules is actually very expensive, thus adding to the inherent hardship and imbalance between the parties.

The arbitration costs in the BVI, including filing and administrative fees, are so high as to make access to the forum impracticable. Such high costs can effectively prevent litigants from effectively vindicating their federal statutory rights. Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2310 (2013) (citing Green Tree Financial Corp.–Ala. v. Randolph, 531 U.S. 79, 90 (2000)). As substantiated in Plaintiff's Memorandum of Law, Dr. Eisen's initial filing fee, calculated pursuant to the ICC rules, would be at least $32,267.75, and he would be responsible in addition for a share of the remainder of the $129,071 total advance on costs under the ICC rules. See Plaintiff's Mem. of Law 10, Dkt. No. 11 (August 12, 2016). The travel and other expenses (beside legal fees) could easily bring the expense well beyond $100,000 (or more than half of the Plaintiff's investment).



*This Case is Distinguishable*

The facts of this case are not like the other cases relied on by Defendants, where courts have compelled arbitration under the FAA.

- Defendants are not engaged in sharp business practices – they are conducting an on-going fraudulent securities fraud. This is not simply a commercial dispute.
- Defendants already held substantial sums of the Plaintiff's money prior to inducement of the Investment Contracts, the original "investments" having been made under oral agreements that were reversed by the written investment contracts.
- Inducement of the Third Investment Contract included the assertion that Plaintiff had already relinquished his rights to a United States court.
- Defendant's efforts to evade United States and New York law are overt and violate the New York requirement that New York courts have jurisdiction over securities sales in New York.
- Defendant's non-compliance with laws pertaining to their sale of securities is total. There was no compliance whatsoever.
- Arbitration in the BVI is, in fact, very expensive and does not represent a viable alternative to litigation.
- A British Virgin Islands arbitrator will not give effect to United States and New York statutory civil liability or broker registration violations.
- Scams are not afforded protection under law.

At the oral argument before the Court, Defendant's counsel argued that to not give effect to the arbitration clause essentially guts the Arbitration Act itself. A different policy issue is presented however. To allow the Defendants to conduct a scam in the United States, and then to hide in the BVI, protected by this arbitration clause, is to allow foreign actors to ignore the very United States and New York laws and regulations designed to regulate their business and to protect citizens such as the Plaintiff. It guts the protection of American law and practicable access to justice. Plaintiff's allegations demonstrate that the arbitration clauses were effective primarily in aiding Defendants in violating American securities laws: Plaintiff explicitly believed that the arbitration provisions meant his only choice was to continue going along with their demands. This is not a case where giving effect to the arbitration clauses in a contract furthers the policy goals of the Federal Arbitration Act. Here, it would only work an injustice on the very person it was designed to protect.



Arbitrators, at best, settle business disputes. Courts do justice. This case needs a Court. Thank you for your courtesies and attention.

Respectfully Submitted,
Kavinoky Cook LLP

David G. Brock, Esq.
*Attorneys for Plaintiff*
726 Exchange Street, Suite 800
Buffalo, New York 14210
Telephone: (716) 845-6000
E-Mail: dbrock@kavinokycook.com

cc: Michael Sullivan, Esq. (Counsel for Defendants, via email)
Glen A. Sproviero, Esq. (Counsel for Defendants, via email)
Atul Singh, Esq. (Counsel for Defendants, via email)

501367