# EXHIBIT A

IN THE MATTER OF:- VENULUM LTD.

BETWEEN:-

BERNARD EISEN

- and -

(1)  VENULUM LTD.
(2)  GILES CADMAN

Claimant

Defendants

EXPERT OPINION OF ANDREW THORP

## INTRODUCTION

1.  I am instructed by Giles Cadman, the Second Defendant to proceedings commenced in the U.S. District Court for the Western District of New York, in the United States of America (*the U.S. Court*). I have been asked to give my opinion to the U.S. Court on two discrete issues relating to (i) the validity of an arbitration clause in the British Virgin Islands; and (ii) whether the parties to the arbitration agreement may vary the terms of the arbitration clause.

2.  I am a partner at Harney Westwood & Riegels, a British Virgin Islands and Cayman Islands law firm (*Harneys*). I am also head of Harneys' Litigation and Insolvency Department in the BVI. I was admitted to practice as a solicitor of the Supreme Court of England and Wales in 1998. Since 2005 I have been admitted to practice as a solicitor in the BVI. Harneys is the oldest and largest law firm in the BVI and has offices in 14 other jurisdictions.

## SUMMARY OF OPINION

3.  Arbitration clauses are valid in the BVI in circumstances where contracting parties elect in writing that the agreements to which they are party should contain an arbitration clause. Until recently, arbitrations in the BVI were governed by the Arbitration Act 1976 (the *1976 Act*). On 1 October 2014 the Arbitration Act 2013 came into force (the *2013 Act*). Subject to any provision to the contrary in the ICC Rules, it is possible to vary an arbitration clause.

1

THE BVI JURISDICTION

4.  The British Virgin Islands is a British overseas territory. The BVI legal system is a common law system falling under the jurisdiction of the Eastern Caribbean Supreme Court. The Supreme Court Order 1967 (the *1967 Order*) and the Eastern Caribbean Supreme Court Act (Cap. 80) (the *ECSCA*) give statutory jurisdiction to the Courts in the BVI.

5.  In particular, section 7 and section 11 of the ECSCA vest powers in the BVI Court. Section 7 states:

> "The High Court shall have and exercise within the Territory all such jurisdiction (save and except the jurisdiction in Admiralty) and the same powers and authorities incidental to such jurisdiction as on the first day of January, 1940 was vested in the High Court of Justice in England."[1]

6.  Section 11 of the ECSCA states:

> "The jurisdiction vested in the High Court in civil proceedings, and in probate, divorce and matrimonial causes, shall be exercise in accordance with the provisions of this Ordinance and any other law in operation in the Territory and rules of court, and where no special provision is therein contained such jurisdiction shall be exercised as nearly as may be in conformity with the law and practice administered for the time being in the High Court of Justice in England."

7.  Further to the Virgin Islands (Appeals to Privy Council) Order 1967 (the *Privy Council Order*), the Judicial Committee of the Privy Council, sitting in the United Kingdom is the court of final appeal for the United Kingdom overseas and Crown dependencies. Article 3 of the Privy Council Order states:

> "(1) Subject to the provisions of this Order, an appeal shall lie as of right from decisions of the Court to Her Majesty in Council in the following cases –

---

[1] "High Court" is defined in the ECSCA as 'the High Court of Justice established by the Courts Order' and the Courts Order is defined as the Supreme Court Order, 1967.

> (a) where the matter in dispute on the appeal to Her Majesty in Council is of the value of 300 sterling or upwards or where the appeal involves directly or indirectly a claim to or question respecting property or a right of the value of 300 sterling or upwards, final decisions in any civil proceedings;[2]
>
> (b) final decisions in proceedings for dissolution or nullity of marriage; and
>
> (c) such other cases as may be prescribed by any law for the time being in force in the Virgin Islands.
>
> (2) Subject to the provisions of this Order, an appeal shall lie from decisions of the Court to Her Majesty in Council with the leave of the Court in the following cases -
>
> (a) where in the opinion of the Court the question involved in the appeal is one that, by reason of its great general or public importance or otherwise, ought to be submitted to Her Majesty in Council, decisions in any civil proceedings; and
>
> (b) such other cases as may be prescribed by any law for the time being in force in the Virgin Islands.
>
> (3) An appeal shall lie to Her Majesty in Council with the special leave of Her Majesty from any decision of the Court in any civil or criminal matter."

8.  Further to section 79 and Schedule 2, paragraphs 4, 5 and 6 of the 2013 Act, the BVI Court is the supervisory court for BVI arbitrations. The 2013 Act provides recourse against an arbitral award by way of appeal to the High Court with further rights of appeal available in the Court of Appeal of the Eastern Caribbean Supreme Court.

## BVI ARBITRATION ACTS

9.  The significant differences between the 1976 Act and the 2013 Act are that the latter: incorporates and is modeled on the UNCITRAL Model Law on International Commercial Arbitration (the *Model Law*); extends to the BVI the full benefits under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the *New York Convention*);[3] and provides for the creation of a BVI International Arbitration Centre (the *BVI IAC*).[4] The BVI

---

[2] "Court" is defined in the 1967 Order as the Court of Appeal established by the Court Order which in turn is defined as the West Indies Associated States Supreme Court Order, 1967 which was the former name of the ECSCA.
[3] Section 34 of the 1976 Act partly adopts the New York Convention and permits enforcement in the BVI of arbitral awards made in other New York Convention states.
[4] See http://www.bviiac.org/About-Us for the BVI IAC's website.

IAC has recently published the BVI IAC Arbitration Rules which came into force on 16 November 2016 (the *BVI IAC Arbitration Rules*).

10. Under the 1976 Act, an arbitration agreement was defined as: *"an agreement in writing including an agreement contained in an exchange of letters or telegrams, to submit to arbitration present or future differences capable of settlement by arbitration"*.

11. The 2013 Act defines an arbitration agreement at section 17, which reflects the Model Law·

> *"Article 7 of the UNCITRAL Model law, the text of which is reproduced below, has effect:*
>
> *Article 7. Definition and form of arbitration agreement*
>
> *(1) "Arbitration agreement" is an agreement by the parties to submit to arbitration all or certain disputes which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not. An arbitration agreement may be in the form of an arbitration clause in a contract or in the form of a separate agreement.*
>
> *(2) The arbitration agreement shall be in writing.*
>
> *(3) An arbitration agreement is in writing if its content is recorded in any form, whether or not the arbitration agreement or contract has been concluded orally, by conduct, or by other means.*
>
> *(4) The requirement that an arbitration agreement be in writing is met by an electronic communication if the information contained therein is accessible so as to be useable for subsequent reference; "electronic communication" means any communication that the parties make by means of data messages; "data message" means information generated, sent, received or stored by electronic, magnetic, optical or similar means, including, but not limited to, electronic data interchange (EDI), electronic mail, telegram, telex or telecopy.*
>
> *(5) Furthermore, an arbitration agreement is in writing if it is contained in an exchange of statements of claim and defence in which the existence of an agreement is alleged by one party and not denied by the other.*
>
> *(6) The reference in a contract to any document containing an arbitration clause constitutes an arbitration agreement in writing, provided that the reference is such as to make that clause part of the contract."*

12. The extension to the BVI of the New York Convention will ensure that arbitration awards under the 2013 Act will be enforceable in all countries signatory to the New York Convention meaning that arbitration awards arising out of arbitrations taking place in the BVI will be recognised by all member states throughout the world subject to provisions to the Declarations and Reservations entered into by each member state do with non-enforcement.[5]

13. The BVI IAC is a centre (the *Centre*) which provides facilities to schedule arbitrations in custom-built rooms which are able to accommodate anywhere between 8 and 200 people. The suites within the Centre may be configured to suit the unique requirements of any type of arbitration, meetings, seminars, conferences and court hearings.

14. The IAC Rules were compiled based on the 2010 UNCITRAL Arbitration Rules in consultation with experts in the field including John Beechey CBE, the President of the ICC International Court of Arbitration between January 2009 and June 2015 (*Mr Beechey*). Mr Beechey is the Chairman of the BVI IAC. The BVI IAC's arbitration panel currently comprises over 190 highly regarded international practitioners drawn from common law and civil law jurisdictions.[6]

## THE AGREEMENTS

15. I have been shown the following agreements entered between the Claimant and the First Defendant: (a) an agreement dated 16 March 2010 (b) Fine Wine Master Purchase Agreement, dated 3 October 2014 and (c) Account Opening Form and Terms and Conditions, undated (together the *Agreements*).

16. The March 2010 agreement provides the governing law of that agreement as the law of the British Virgin Islands at clause 7. Clause 8 provides:

> *"In the event that any dispute whatsoever arises between the Parties in relation to or in any way in connection with this Agreement, the Parties hereby agree that such dispute shall be referred to binding arbitration in the British Virgin Islands applying*

---

[5] See http://www.newyorkconvention.org/countries for the full list of Declarations and Reservations.
[6] For a full list of arbitrators on the BVI IAC's panel. A list of panel members may also be found at http://www.bviiac.org/Dispute-Resolution-Services/Arbitrators.

*British Virgin Islands law. Such arbitration shall be before an arbitrator appointed by Venulum. The arbitration shall take place in accordance with the Rules of the International Chamber of Commerce"*

17. Clause 9 of the Fine Wine Master Purchase Agreement (*FWMPA*) governs arbitration in the BVI. The relevant parts of clause 9 are set out below.

*"9.1.    Law. The Contract shall be governed by and construed in accordance with the law of the British Virgin Islands, without regard to the conflicts of law provisions thereof..."*

*"9.2.    Arbitration. In the event that any dispute whatsoever arises between the Contractholder and the Company in relation to or in any way in connection with the Contract, the Contractholder and the Company hereby agree that such dispute shall be finally settled by binding arbitration in the British Virgin Islands applying British Virgin Islands law in accordance with the Rules of the Arbitration of the International Chamber of Commerce ("ICC Rules")*

18. The Account Opening Form provides:

*"In the event that any dispute whatsoever arises between the Client and Venulum Ltd. in relation to or in any way in connection with this Agreement, the Clients and Venulum Ltd. hereby agree that such dispute shall be referred to binding arbitration in the British Virgin Islands applying British Virgin Islands law. Such arbitration shall be before one arbitrator appointed by the Client, one arbitrator appointed by Venulum Ltd. and one arbitrator appointed by such two arbitrators... The arbitration shall take place in accordance with the Rules of the International Chamber of Commerce*

*"If the claim to be arbitrated is a claim by the Client, then unless the Client's arbitrator is appointed within six months of the dispute arising, such claim shall be deemed to be absolutely released, waived and barred and Venulum Ltd. shall be discharged from all liability."*

## VALIDITY OF THE ARBITRATION CLAUSES

19. Further to the 1976 Act and 2013 Act, all of the arbitration clauses set out in each of the Agreements are valid.

20. Notwithstanding that the Agreements were entered into prior to the 2013 Act coming into force, enforcement of an arbitral award further to a BVI arbitration will be governed by the provisions of the 2013 Act as that is the Arbitration Act currently in force. Therefore, the New York Convention rules will apply to enforcement.

## VARIATION OF THE ARBITRATION CLAUSES

21. I am instructed to give my opinion on whether it is possible for the parties to agree to vary aspects of the arbitration clauses: in particular (i) clause 8 in the March 2010 agreement enabling Venulum to appoint an arbitrator unilaterally; and (ii) the clause in the Account Opening Form discharging Venulum from all liability if an arbitrator is not appointed within six months of the dispute arising.

22. The practitioner's text *Redfern and Hunter on International Arbitration* states the following:[7]

> *"Party autonomy is the guiding principle in determining the procedure to be followed in an international arbitration. It is a principle that is endorsed not only in national laws, but also by international arbitration institutions worldwide, as well as by international instruments such as the New York Convention and the Model Law. The legislative history of the Model Law shows that the principle was adopted without opposition, and Article 19(1) of the Model Law itself provides that: 'Subject to the provisions of this Law, the parties are free to agree on the procedure to be followed by the arbitral tribunal in conducting the proceedings.'"*

23. The provisions sought to be varied are to do with the procedure by which the arbitration is to be conducted; in particular, which party chooses the arbitrator and procedure as to timing. I am of the view that subject to any prohibitory provision in the ICC Rules,[8] the parties are able to agree on the proposed variations to the arbitration clauses.

---

[7] *Redfern and Hunter on International Arbitration*, 6th ed., para 6.07
[8] I am not aware of there being any such prohibition.

CONCLUSION

24. For the reasons set out above, the arbitration clauses contained in the Agreements are valid and the BVI IAC has the power to grant a valid and enforceable arbitral award. The parties are able to vary the terms of the arbitration clauses in the manner proposed.

ANDREW THORP

HARNEY, WESTWOOD & RIEGELS

22 NOVEMBER 2016

STATEMENT

I confirm that:

    i.    I have no conflict of interest of any kind, other than any conflict disclosed in my report;

    ii.    I do not consider that any interest disclosed affects my suitability as an expert on any issue in respect of which I have given an opinion;

    iii.    I will advise the instructing party if between the date of my report and the final hearing, there is any change in circumstances which affects my position as to (i) and (ii) above; and

    iv.    I understand that my duty is to the Court and I have complied with that duty.

STATEMENT OF TRUTH

I confirm that I have made clear which facts and matters referred to in this report are within my own knowledge and which are not. Those that are within my knowledge I confirm to be true. The opinions I have expressed represent my true and complete professional opinions on the matters to which they refer

Name:  Andrew Thorp

Signature:

Date:  23rd Nov 2016.

9

IN THE MATTER OF:- VENULUM LTD.

BETWEEN:-

BERNARD EISEN

Claimant

- and -

(1)  VENULUM LTD.
(2)  GILES CADMAN

Defendants

EXPERT OPINION OF ANDREW THORP

Harney Westwood & Riegels
Craigmuir Chambers, PO Box 71
Road Town, Tortola
British Virgin Islands
T (284) 494-2233| F (284) 494-3547
andrew.thorp@harneys.com
REF: 046784.0017-SZD

HARNEYS