

kavinoky cook LLP

November 28, 2016

<u>Via Facsimile (585)613-4325</u>

Honorable Elizabeth A. Wolford
United States District Judge
United States District Court, Western District of New York
Kenneth B. Keating Federal Building
100 State Street
Rochester, New York 14614

    Re:   *Eisen v. Venulum Ltd. et al*
           Case No. 1:16-cv-461-EAW

Dear Judge Wolford:

    I am writing on behalf of the Plaintiff to raise objections to Defendants' improper November 23, 2016 post-argument submission. That submission goes far beyond the questions raised at oral argument, asserts new facts and issues not addressed in Defendants' original motion papers, and improperly offers exhibits not previously submitted, without foundation, and wholly immaterial to the matters before this Court.

    In addressing the applicability of British Virgin Islands law to the enforceability of the arbitrability clause – the <u>only</u> argument raised in Defendant's motion - counsel has submitted, as Exhibit A, a gratuitous, self-serving "Expert Opinion" as "instructed by Giles Cadman" (Exhibit A at paragraph 1). This submission lacks any foundation as expert testimony, and does nothing more than echo the legal arguments presented by Defendants' counsel in their submission. This exhibit is improper at worst, unnecessary at best, and should not be considered by the Court.

    Throughout their submission, Defendants present a significant rehash of the underlying formation and substance of the relationship, and dispute, between the parties which, as the Court is well aware, is <u>not</u> the subject of this motion and not at issue at this time. Nonetheless, Defendants have seen fit to argue the underlying merits of the litigation, and to submit, for the first time, "evidence" in the form of communications with

726 EXCHANGE STREET SUITE 800 BUFFALO, NY 14210
TEL 716.845.6000 FAX 716.845.6474

full spectrum business law

Hon. Elizabeth A. Wolford
November 28, 2016

Plaintiff and his then-counsel on the subject of the disputed investments (Exhibits B and C). Nowhere do these arguments, or selected exhibits, address the question of the enforceability and unconscionability of the arbitration provision. Having done so, however, it is interesting to note that the very facts and issues raised serve rather to bolster Plaintiff's claims of an illegal, on-going scheme to extort, through threats and false promises, even more money from Plaintiff than Defendants assert is due to them.

The newly-disclosed evidence from Verulum presents itself as "accommodating" Dr. Eisen by offering some payment between $41,000 and $10,000 in exchange for a full and complete release of all claims, past, present and future.[1] What Defendants are actually doing, however, is holding Plaintiff's $122,000 investment (at that time) hostage for not liquidating and continuing to make further demanded payments of another quarter million dollars. Dr. Eisen's only recourse, according to Giles Cadman's March 16, 2010 letter (and included at Exhibit B), was to participate in an arbitration in the British Virgin Islands which he claims (without any proof whatsoever) to have instituted against Plaintiff. While there exists further evidence of coercion in the inducement of these arbitration clauses, which Defendants claim are *not* merged into the Third Investment Contract but which must be read as separate (and inconsistent) provisions, we believe the Defendants' argument only reinforces the unconscionability of these arbitration clauses.

Finally, in a desperate attempt to again defend the underlying contractual dispute, Defendants have now, for the first time, offered -- or even acknowledged the existence of -- what they purport to be a transcript of a brief select segment of a telephone conversation surreptitiously recorded between the Plaintiff and Defendant, Mark Trotter (Exhibit D). Nowhere is the actual recording submitted, identified, or explained, other than to baldly assert that the transcript was "certified by the declaration of Giles Cadman...."

---

[1] This range is based upon a July, 2009 letter from Michael Meredith, Venulum's Canadian counsel, to Plaintiff's counsel, Jonathan Schechter (who was engaged solely to pursue an after-the-fact refund of money already invested). In that letter, Venulum claims that it bought wine for Dr. Eisen's account at "the very peak of the market." They assert that, in addition to the $122,000 already paid, that Dr. Eisen still "owes" an additional 237,945.60, thereby complicating the math. The wine was claimed to have lost 30% of its market value, and was further depressed by a weakening of the British Pound, which added another 20% to the loss. The estimated "discounted" sale price is further discounted from Venulum's own number as Mr. Meredith states that "I have been told by Venulum Ltd. that they do not expect that Dr. Eisen would achieve a sales price of $280,000.00 USB in the current market." It is more likely to be "$210-$220,000.00 USB." Using $210,000 as the sales price and applying the rationale set forth in the letter, Dr. Eisen would receive approximately $10,000 for his investment of $122,000. Nowhere is this precipitous loss of value supported by Venulum. Were there sales commissions paid to Trotter and Serrien? Were there commissions or deductions that Venulum took on the purchase of the wine (if that purchase actually happened). In the correspondence, Venulum is (and always has been) silent on these points. The meager offer to Dr. Eisen, coupled with the threat of a one-sided BVI arbitration, coerced the next phase of his participation in this carefully orchestrated scheme.

2

Hon. Elizabeth A. Wolford
November 28, 2016

(Defendants' submission at page 6). It should be noted that the certification supplied with the transcript was authored by a Notary Public in Toronto, Ontario, and not by Defendant Cadman as claimed; indeed, nowhere is Giles Cadman mentioned, either in the certification, the recording or the brief transcription. Moreover, Defendant Cadman admittedly was not a party to the conversation. Although the conversation is purported to be with Defendant Trotter, he is nowhere mentioned; the only two people identified in the transcript are "Bernie" and an unknown "Voice 1". No foundation has been laid for the offering of this three-year old secret recording, made without Plaintiff's knowledge or consent, and with no assertion, much less proof, that the only other person involved ("Voice 1") made, consented to, or was aware of the recording. No showing has been made that this recording complies with Ontario Criminal Code Section 183.1 (permitting a surreptitious recording with one party's consent) and it therefore constitutes an illegal invasion of Plaintiff's privacy rights.

Defendants' excursion into the substantive issues in the underlying Complaint, coupled with the improper submission of new evidence after oral argument and without legal foundation, renders Defendants' Submission improper. To the extent that the Court deems this new material to be germane to its determination of Defendants' motion, we ask only that the Court consider the true relevance and import of the Venulum letter of June 20, 2009.

Respectfully Submitted,
Kavinoky Cook LLP

David G. Brock, Esq.

cc (via email): Michael Sullivan, Esq.
Glen A. Sproviero, Esq.
Atul Singh, Esq.

501374

3